MARY QUINN ET AL. *vs.* THE SAFE DEPOSIT AND·
TRUST CO., TRUSTEE, ETC.

*Right to Extraordinary Money Dividends on Shares of Stock as Be-·
tween Life-Tenant and Remainder-man—Extra Money Dividend
Held to be Income.*

A testamentary trustee was directed by the will to pay the net income
arising from the estate to the testator's children for life, the principal to
be divided among certain remainder-men after their death. A part of·
the estate consisted of shares of stock in the Canton Company. That
corporation had endorsed certain bonds of a mortgagor and had accu-
mulated a sinking fund, comprising money and ground rents, for the
purpose of paying the bonds at maturity. Almost all of this property
had been accumulated before the testator's death. The bonds were
paid by another corporation, thus leaving the sinking fund so amassed
the property of the Canton Company and at its disposal. The direc-
tors of this company passed a resolution declaring that a certain part
thereof should be carried as capital and a certain part distributed as a
money dividend among the shareholders. *Held,*. that the dividend so·
declared constitutes income to which the life-tenants are entitled, and
not capital of the trust estate.

Appeal from a decree of the Circuit Court No. 2, of Balti-
more City, (STOCKBRIDGE, J.) The special case stated, in
addition to the facts set forth in the opinion of the Court, as.
follows :

10. By an agreement dated February 14, 1882, which was.
duly recorded, between the Northern Central Railway Com-
pany and the Canton Company of Baltimore, the Northern.
Central Railway Company, for a valuable consideration, un-.
dertook and agreed to pay the interest which should there-
after become due on the bonds of the Union Railroad Com-
pany mentioned in the indenture, Exhibit A, and the principal
of the said bonds at their maturity on May 1, 1900, and the·
Northern Central Railway Company has fulfilled that under-
taking and agreement.

11. One of the conditions and provisions of the said agree-
ment dated February 14th, 1882, was, that the said sinking

fund mentioned in the indenture Exhibit, A, was to remain the exclusive property of the Canton Company of Baltimore; and that the Northern Central Railway Company should assume and pay all the said bonds of the Union Railroad Company and the interest thereon as aforesaid, and should exonerate, protect and save harmless the said sinking fund from and against any liability under the said bonds, or any of them, or interest thereon ; wherefore the successors of the trustees named in the indenture, Exhibit A, have by deed duly recorded or intended so to be, dated July 10th, 1900, in which the Union Railroad Company united, granted and conveyed to the Canton Company of Baltimore all the ground rents then remaining in the said sinking fund, consisting substantially of those which had been acquired as aforesaid, (certain minor changes by way of substitution and exchange of certain ground rents having occurred), and also of certain additional ground rents which were from time to time, prior to December 7th, 1899, purchased by the trustees under the indenture, Exhibit A, or their successors as investments for the said sinking fund at the cost in the aggregate of $82,613.31. All the ground rents granted and conveyed to the Canton Company of Baltimore by the said deed, dated July 10, 1900, were valued in the aggregate at $256,996.64 ; (173,483.33 plus $82,613.31).

12. In addition to investments made for the said sinking fund by purchases of ground rents as aforesaid, the trustees thereof purchased from time to time prior to December 7th, 1899, as investments for the said sinking fund, in the aggregate 256 bonds for $1,000 each of the said issue of bonds of the Union Railroad Company, of Baltimore, endorsed and guaranteed by the Canton Company, of Baltimore, mentioned in the said indenture, Exhibit A.

13. In addition to the conveyance of the said ground rents by the said deed dated July 10th, 1900, the trustees for the said sinking fund, as a part thereof, paid (as appears by the said deed) to the Canton Company of Baltimore the sum of $341,619,51 in money, which was made up as follows :  *   *

Out of which sum, $13,717.91, constituted the net amount of income which fell due subsequent to the death of the testator.

The cause was argued before McSherry, C. J., Briscoe, Page, Pearce, Schmucker and Jones, JJ.

*Wm. Pinkney Whyte*, for the appellant.

The attempt of the appellee in the "case stated" to make an apportionment of the dividend between the time of the testor's death and its declaration by the Canton Co. is wholly unwarranted. It does not appear in the action of the company that this dividend was any other than an extra cash dividend which came from the cash realized on the bonds of the Union R. Co. on May 1, 1900. *Bouch* v. *Sproule*, L. R. 12 App. C. 385–397. Ordinarily a dividend in money is to be deemed income. *Gibbons* v. *Mahon*, 136 U. S. 549.

Dividends even earned through long years before the testator's death, and not made part of the plant or improvements, but declared afterwards form income and not *corpus*. *Bates* v. *MacKinley*, 32 Beavan, 280. The dividend to which a tenant for life is entitled is the dividend which the company chooses to declare. There is no difficulty in holding, then, that an ordinary cash dividend of a going corporation goes to the life-tenant, and not to the remainder-man, if he is the beneficial holder of the stock *at the time* when it is declared. There is no question here between a "stock dividend" and a "cash dividend," for the action of the board of directors in their resolution shows *the actual nature of the dividend*. What the corporation declares to be income will be income, and what it declares to be capital will be capital. Whatever is income belongs to the life-tenant. This dividend was an extra dividend and could not have been declared had the Union Railroad Company not provided for the payment of its bonds at maturity, for the guarantee of the Canton Company would have been exacted.

In *Van Doren* v. *Oldin*, 4 C. E. Green, Eq. 180, Chancellor Zabriskie states the rule thus: "When an extra dividend is

declared out of the earnings or profits of the company, after the testator's death, such extra dividend belongs to the life-tenant, *unless part of it was earnings carried to account of accumulated profits or surplus earnings at the death of the testator*, in which case so much must be considered as part of the capital."

There is nothing in the case of *Thomas et al.* v. *Gregg et al.*, 78 Md. 545, which militates with this view. There the stock dividends were based upon the specific earnings of the railroad company for distinct years, and carried to account of surplus earnings for the year 1889, 1890 and 1891, and the year 1889 was the last year of the lifetime of the testator, and what surplus earnings had been used for the permanent improvement of the railway and for new construction, and, of course, what was so distinctly represented as earnings during the lifetime of the testator was decided to belong to the remainder-men, and what accrued thereafter to the life-tenants—but here the fund in cash was realized from purchase of bonds from time to time, as a part of the sinking fund, and is only paid over to the Canton Company after the bonds of the Union Railroad Company were paid at maturity in May, 1900, and the Canton Company exonerated from its guarantee.

*Arthur Geo. Brown* and *R. E. Lee Marshall*, for the appellee.

Under the authority of *Thomas* v. *Gregg*, the appellee submits that the form of a dividend, whether it is distributed in stock or is payable in money, does not, in either case, arbitrarily determine its ownership as between the life-tenant and the remainder-men ; and that, in all cases in which justice requires, an apportionment will be made, it being "the duty of the Court to make such investigations and dispose of the stock in an equitable way between the tenants for life and the remainder-men." Accordingly this Court concluded its opinion in 78 Md. at p. 560, by deciding that : "As the earnings for the year ending September 30th, 1889, can be easily told, and that was before the life-estate commenced, it is but just and in accordance with the intention of the testator, so far as it is shown, that such earnings be treated as capital."

Therefore, in the present case, where the facts distinctly show that almost all of the fund distributed in a dividend was earned or accumulated before the death of the testator, and only a small part after, the Court will, in disposing of such dividend as between life-tenant and remainder-men, inquire as to the time when the fund, out of which the dividend was paid was earned or accumulated; and will dispose of it in the proportions proper to each class; not being controlled by the form of the dividend, or by the time when it was declared or was made payable; especially in view of the fact, made plain by the agreed statement, that the dividend now in question was, both as to origin and amount, extraordinary, and was paid out of a fund which had been accumulating during many years.

Where the facts of a case show that a dividend was earned before the death of a testator, and, consequently, before the life-estate commenced, such a dividend, even if declared out of the profits and net earnings of the corporation, constitutes as between the life-tenant and remainder-men capital; because, in contemplation of law (in the absence of any express direction by the testator), such undivided earnings are to be regarded as capital and not income of the estate.    *Thomas* v. *Gregg*, 78 Md. 560.

The only qualification of this rule which may be inferred from *Thomas* v. *Gregg*, is in those cases in which it is impossible for the Court to ascertain the periods within which the profits distributed in the dividend were earned.    This qualification, however, is not in conflict with the principle itself, but merely limits its operation to those cases in which its application is practicable.

Applying this rule to the present appeal, and assuming for the purposes of such application that this dividend represents earnings within the meaning of this Court as expressed at page 560 of 78 Md., the record shows that of the $4,000 received by the appellee as a dividend, $186 was earned after the death of the testator, and $3,814 was earned before his death, and, therefore, that the sum of $3,814 so earned before the death

of the testator, was, and is a part of the capital of his estate, and was rightly awarded by the decree below to the appellee, to be held with the rest of the trust estate according to the terms of the will.

*Taylor on Private Corporations* (4 ed. 1898), sec. 799 : "*An ordinary cash dividend* earned before, but declared after the testator's death, *is to be distinguished from* a distribution in the shape of *a cash dividend*—consequent, perhaps, on a change of policy in the body corporate—*of long accumulated profits.*" * * * " Likewise, when after the testator's death, the corporation sells a portion of its property or franchises, and distributes the proceeds in the shape of a cash dividend, that too is a part of the principal and is not income to be paid over to the life-tenant. Of a similar *status* is money paid to a corporation for property taken by a city and distributed as a cash dividend." Section 800 : * * * " But *even according to the Massachusetts decisions*, that which may be distributed in the form of *a cash dividend is sometimes principal.*" 2 *Beach on Private Corporations* (ed. 1891), sec. 600: " In the case of accumulated surplus, the American rule is that when at last the distribution is made, what was earned in his time should go to the tenant for life, and what was accumulated before the commencement of the life-estate should go to the principal fund." * * * " The extra dividends," (as contradistinguished from regular dividends), " which are by the great preponderance of English authority still held to be accretions to the capital of the trust fund." *Clark on Corporations*, page 368 : " In England the rule is that an ordinary or usual dividend, whether paid in cash or in stock or property, belongs to the life-tenant, while an extraordinary cash or stock or property dividend belongs to the *corpus* of the estate." 2 *Cook on Corporations* (4 ed. 1898), sec. 552 : " Where shares of stock are held by an estate, and the income of the estate is to go to a life-tenant for life, and the remainder to another party, the question of whether the life-tenant or the remainder-man is entitled to a stock dividend or extraordinary cash dividend is a perplexing one. The stock dividend or extraordinary cash

dividend may represent profits which were earned or accumulated before the life-tenancy began.   In that case it is clear that in justice the remainder-man should receive it.   If, however, it was earned after the life-tenancy began, it is clear that the life-tenant should have it.   " If it was earned partly before and partly after the life-tenancy began, then it is apparent that in justice some apportionment should be made if possible."

These citations show that it is established, not only as matter of principle, but also by the great weight of authority that the disposition of extraordinary cash dividends should be the same as that which is proper in respect to stock dividends ; and that the case of *Thomas* v. *Gregg* is conclusive of the present controversy, as the Court below assumed, and the appellee has in this brief contended.

By its deed, dated April 25, 1873, the Canton Company conveyed ground rents which then represented the capital sum of $173,483.33 to trustees, who were thereby required to hold the property, collect the ground rents, and by reinvesting and so capitalizing them, gradually accumulate a sinking fund, which the trustees were required to convert into money before May 1, 1900, and pay on that day in the redemption at maturity of the second mortgage bonds of the Union Railroad Company, amounting to $600,000, which were endorsed and guaranteed by the Canton Company.   Subsequently, by agreement dated Febuary 14, 1882, the Northern Central Railway Company undertook to pay the interest which should thereafter become due on the said bonds, and the principal of them at their maturity on May 1, 1900; and it was also by the said instrument agreed by and between the corporations interested that the said sinking fund should be and become the property of the Canton Company.

Thereby—subject only to the continued solvency and the good faith of the Northern Central Railway Company—the sinking fund, as it then existed and all interest thereafter collected by the trustees from every part of it, and all additions to the capital of the sinking fund resulting from the accumulations of such interest and its reinvestment, were, and became

in substance and effect, the property of the Canton Company, although the actual enjoyment was postponed until, by the performance of the undertaking of the Northern Central Railway Company, the trustees who held the legal title to the sinking fund should be free to pay and convey it to the Canton Company. Not only, therefore, was the dividend, which was ultimately declared and paid out of a part of this long accumulated fund, in every sense of the word an extraordinary one—as has been already fully shown; but the sinking fund itself, as it existed on February 14, 1882, and thereafter as it was accumulated and grew until the testator's death on December 9, 1899, was a capitalized asset of the Canton Company of Baltimore.

BRISCOE, J., delivered the opinion of the Court.

The object of the proceedings in this case is to obtain a construction of certain clauses of the last will and testament, of John Quinn, late of Baltimore City, deceased. The appeal is from a decree of the Circuit Court No. 2, of Baltimore City, passed in a special case stated, under the 47th General Equity Rule of that Court.

John Quinn, the testator died on the 7th of December, 1899, leaving a last will and testament, which was duly admitted to probate in the Orphans' Court of Baltimore City. By the third clause of his will he provided (among other things) as. follows: "I give, devise and bequeath all the rest and residue of my property, real, personal and mixed of every kind and description and wheresoever situate, unto the Safe Deposit and Trust Company of Baltimore, a body corporate, duly incorporated under the laws of the State of Maryland, in trust and confidence nevertheless, that is to say, in trust to hold the same and take, collect and receive the dividend and income thereof, and, after deducting the necessary and proper costs and expenses, to pay over out of the net income of my said estate, the sum of twelve hundred dollars per year to my wife, Mary Quinn, for and during the period after my death that she may remain unmarried, and if she shall not marry, then for and during the term of her natural life, to be drawn by her in such

sums as she may desire and at such time as she may see fit, and also to permit my said wife to have for her home during her life or as long as she may remain unmarried, my present dwelling and all furniture and personal effects contained therein; and upon her death and marriage, which ever shall first occur, then this trust to cease so far as relates to her, and upon the further trust to pay the entire net income arising from my estate, (after deducting the sum of twelve hundred dollars payable as aforesaid unto my said wife, Mary Quinn, during the period she shall remain unmarried, and if she should not marry, then for and during the term of her natural life), annually among my children share and share alike, for and during the term of their respective natural lives, and when each of my children shall arrive at the age of forty-five years, I direct that he or she shall be paid the sum of five thousand dollars out of the principal of my estate, and I will and direct that the income set apart for my said children shall be paid only upon the personal and separate receipt of each of my said children, or of their legal guardian or guardians, so that neither the said income nor the said sum of five thousand dollars payable to each of my said children shall be liable for their debts or contracts or to be taken in execution or attachment however, and so that they nor any of them shall not make any assignment or anticipation of said income or sum of money to be given them. If my said sons or daughters, or either of them, should die, then the part or portion of such decedents shall be paid to the respective legal heirs of such decedent or decedents, subject to the conditions and limitations herein contained as to the manner of payment and taking of receipt for such income.

"And I hereby direct that this trust shall cease upon the death of my last surviving child, when my property shall be divided, *per stirpes*, and not *per capita*, among the descendants of my said children."

The testator left surviving him a widow and six children. The widow is now living and is unmarried, and all of the children are now living.

There is no dispute as to the facts of the case, and the ques-

tions under the special case stated relate solely to the disposition of certain dividends declared since the testator's death, upon four hundred shares of the capital stock of the Canton Company of Baltimore, owned by the testator at the time of his death, and which are now held by the trustee.

It is contended upon the part of the appellants, the children of the testator, that the whole of the dividend on the shares of stock of the Canton Company should be paid to them as net income, share and share alike, as life-tenants, under the third clause of the testator's will.

The appellee on the other hand contends that only the accumulations which accrued subsequent to the death of the testator constitute net income, which is to be paid to the children, and the trustee is to receive, as capital, that part of the $4,000 which fell due during the life of the testator.

The Court below decreed, under the facts of the case stated: First. That the whole of the net amount of the dividend on 400 shares of the capital stock of the Canton Company of Baltimore belonging to the said trust estate and mentioned in the proceedings, to wit: $4,000 less the commissions of the trustee, is not to be and shall not be paid as income to and among the children of the said testator share and share alike; and second, that the sum of $186.00 mentioned in paragraph 13 of the case stated (out of the total dividend of $4,000 which has been declared and paid upon and in respect to the said 400 shares of stock), less the commission of the trustees on the said sum, is to be and shall be paid to the children of the testator, to wit: Mary Quinn, Agnes Quinn, Joseph E. Quinn, Augustin Quinn, Paul J. Quinn and Peter Quinn, and shall be equally divided among them; and the residue of the net amount of the said dividend is to be and shall be retained by the Safe Deposit and Trust Company of Baltimore (after payment thereout of the costs and expenses mentioned in paragraph fourth of this decree), as a part of all the rest and residue of the testator's property which he gave, devised and bequeathed to it as trustee in and by clause third of his last will and testament.

It is from this decree that the appellants have appealed.

The facts of the case bearing upon the question of the declaration of the dividend are stated in the record to be as follows:

(1) "The following appears from the report of the President and Directors of the Canton Company of Baltimore of June 13th, 1900, viz.: "On May 1st, 1900, the second mortgage of the Union Railroad became due, and under an agreement with the Canton Company, this mortgage was paid off by the Northern Central Railway Company, leaving the sinking fund which has been amassed for the protection of this mortgage, the property of your company." "The directors at their meeting in February decided to declare a dividend from these proceeds of $10 per share, which had been done. The remainder of the sinking fund is invested in ground rents on the company's property and some cash. It has been decided by your board of directors that the ground rents, which represent a very handsome investment, shall be retained, and the rents accruing therefrom shall be put to our income account, which will enable us to increase our dividends."

(2) The resolution declaring said dividend was passed February 14th, 1900, and is as follows:

"Whereas, a sinking fund of the Union Railroad Company matures on the 1st day of May next amounting to about $600,000, which consists of both cash and ground rents,

"Be it therefore voted—

"That the cash on hand and received for Union Railroad bonds shall be distributed to the stockholders of record on the first of May to the amount of ten ($10) dollars per share as a dividend, and the balance of cash and the ground rents take the course which has been heretofore adopted as the policy of the company."

The question here presented is an interesting one and is not free from difficulty. The rule of law controlling questions such as are now presented is thus stated by the English Courts in the case of *Bouch* v. *Sproule*, L. R. 12 App. Cases, 385: "When a testator or settlor directs or permits the sub-

ject of his disposition to remain as shares or stocks in a company which has the power either of distributing its profits as dividends or of converting them into capital and the company validly exercises this power, such exercise of its power is binding on all persons interested under him the testator or settlor, in the shares, and, consequently what is paid by the company as dividend goes to the tenant for life and what is paid by the company to the shareholder as capital, or appropriated as an increase of the capital stock in the concern, enures to the benefit of all who are interested in the capital. In a word what the company says is income shall be income and what it says is capital shall be capital."

In *Gibbons* v. *Mahon*, 136 U. S. 559, the Supreme Court, in an elaborate discussion of this question, says: "When a distribution of earnings is made by a corporation among its stockholders, the question whether such distribution is an apportionment of additional stock representing capital or a division of profits and income, depends upon the substance and intent of the action of the corporation, as manifested by its vote or resolution and ordinarily a dividend declared in stock is to be deemed capital, and a dividend in money is to be deemed income of each share." The same principle is maintained in *Bates* v. *MacKinley*, 31 Beavan, 280; *Van Doren* v. *Oldin*, 4 N. J. R. Eq. 176; *Richardson* v. *Richardson*, 75 Maine 570.

Such then being the present state of the law upon this question, and applying it to the case now before us, we think the Court below committed an error in apportioning the dividend, under the facts and circumstances of this case, between the time of the testator's death and its declaration by the Canton Company, but should have directed the whole of the $4,000 dividend to have been paid to the testator's children, the life-tenants, less expenses of administering the trust.

But it has been urged upon the part of the appellee that this case falls within the principle established by this Court in the recent case of *Thomas et al.* v. *Gregg et al.*, 78 Md. 560, and that that case is conclusive of the present controversy. The present case we do not think is like that of *Thomas* v.

*Gregg, supra,* where a dividend of twenty (20) per cent was declared upon the common stock of the B. & O. R. R. Company for the period ending September 30th, 1891, payable on and after 31st day of December, 1891, *in common stock* of *the company,* at the office of the treasurer, to the stockholders of record, on the 30th of November, 1891.   In that case it was held, that "as the earnings for the year ending September 30th, 1889, can be easily told and that was before the life-estate commenced, it was but just and in accordance with the intention of the testator, so far as it is shown, that such earnings be treated as capital."   The facts of the present case, are very different.   The sinking fund in this case which was created under the deed, dated April 25th, 1873, was a special fund, and held by the trustees for the purpose of paying at maturity the bonds of the Union Railroad Company, which were endorsed by the Canton Company.   By a subsequent agreement, dated on February 14, 1882, the Northern Central Railway Company agreed to pay the interest on the bonds of the Union Railroad Company, and also the principal of the said bonds at their maturity, and on the 1st of May, 1900, actually paid these bonds.   By reason of this payment the sinking fund became the property of the Canton Company and to be disposed of by that company for the best interest of those interested. Subsequently, at a meeting of the directors of the company, on the 14th of February, 1900, it was declared by resolution, what part of this fund should be carried to capital, and what portion should be distributed as a dividend to the stockholders. It will also be seen that the fund constituting the sinking fund, had been held by the trustees for the purpose of paying the bonds at their maturity, and had not been capitalized, as was the fund in the case of *Thomas* v. *Gregg, supra.*   It was paid to the Canton Company, as its property, and was distributed by it, after the death of the testator, Quinn.

We find nothing in the case of *Thomas* v. *Gregg* in conflict with the conclusion which we have reached in this case.

The directors of the Canton Company determined by resolution passed on February 14th, 1900, how and in what manner

this fund should be distributed, and their discretion in this respect, having been properly and validly exercised, should not be interfered with nor controlled by the Courts. *New York, Lake Erie & Western, R. R.* v. *Nickols,* 119 U. S. 296 ; *Gibbons* v. *Mahon,* 136 U. S. 558.

For these reasons, and under the special facts and circumstances of this case, we are all of the opinion, that the whole $4,000 dividend, less commissions is to be paid to the testator's children, share and share alike. It therefore follows that the decree of the Court below will be reversed and the cause remanded so that a decree may be passed in accordance with the views herein expressed.

*Decree reversed and cause remanded, with costs.*