SAMPSON REED *vs.* JAMES E. HEAD & others.

A testatrix in her will gave to A. "twenty shares in the Boston Water Power Company, and thirty shares in the Boston Mill Dam Company, subject to the restrictions hereafter named." She also gave the like number of shares in each company to B., "the income of which is to be paid to her during her natural life; and at her death the stock is to go to her heirs." The testatrix afterwards provided that the stock "given to B. shall not be sold during her life, but that the dividends thereon may be paid to her during her life, and at her death the stock go to her heirs. My executor may transfer the said stock to her trustee; or he may himself hold it in trust for her. The stock given to A. is not to be

sold during his life, unless by special direction of the judge of probate, on good cause being shown; but the income thereof is to be paid to him during his life by my executor, ιd at the death of said A. the said stock shall be divided among his lawful issue, if any he leaves," with another disposition of it, on failure of such issue. *Held*, that these legacies were both given in trust, the dividends only to be paid to A. and B. during their lives.

If a legacy is given of the dividends or income upon stock in a land company, which is known to derive its profits from the improvement and sale of land, the legacy will include all dividends which may be declared thereon, although the same in reality consist of a portion of the capital stock of the company.

BILL IN EQUITY by the executor and trustee under the will of Elizabeth Smith, deceased, praying for instructions as to the execution of his trust. The will contained the following provisions :

" *Second*, I give to James Edward Head, son of my brother John Head, twenty shares in the Boston Water Power Company, and thirty shares in the Boston Mill Dam Company, subject to the restrictions hereafter named.

" *Third*, I give to Elizabeth Smith Head, daughter of Henry A. Head, of Bangor, in the State of Maine, twenty shares in the Boston Water Power Company, and thirty shares in the Boston Mill Dam Company, the income of which is to be paid to her during her natural life ; and, at her death, the stock is to go to her heirs.

" My will is that the Water Power and Mill Dam stock given to Elizabeth Smith Head shall not be sold during her natural life, but that the dividends thereon may be paid to her during her life, and, at her death, the stock go to her heirs. My executor may transfer the said stock to her trustee, or he may himself hold it in trust for her.

" The Water Power and Mill Dam stock given to James Edward is not to be sold during his life, unless by special direction of the judge of probate, on good cause being shown ; but the income thereof is to be paid to him during his life by my executor, or by such trustee as may be hereafter appointed ; and, at the death of the said James Edward, the said stock shall be divided among his lawful issue, if any he leaves ; and, if he dies without leaving issue, the said stock, or the proceeds of it, if sold, shall go to the Boston Society of the New Jerusalem."

The facts, so far as material, are stated in the opinion. The case was reserved by the chief justice for the determination of the whole court.

*G. O. Shattuck*, (*P. W. Chandler* with him,) for the plaintiff. The estates given to James Edward Head and Elizabeth Smith Head are only estates for life. *Saunderson* v. *Stearns*, 6 Mass. 37. *Ellis* v. *Merrimack Bridge*, 2 Pick. 243. *Barrus* v. *Kirkland*, 8 Gray, 512. The general rule of law is, that any extraordinary bonus or addition to the usual income of stock or other property which is settled in trust for one for life, with remainder over, must be treated as capital and added to the principal fund. *Clayton* v. *Gresham*, 10 Ves. 288. *Paris* v. *Paris*, Ib. 185. *Brander* v. *Brander*, 4 Ves. 800. Tiffany & Bullard on Trusts, 637, and cases cited. That rule is applicable to the present case.

*D. E. Ware*, for the defendant Elizabeth Smith Head. The third item of the will is an absolute gift to this defendant of the shares therein named; and this gift is not controlled by other clauses in the will. *Ellis* v. *Merrimack Bridge*, 2 Pick. 243. *Adams* v. *Cruft*, 14 Pick. 16. *Albee* v. *Carpenter*, 12 Cush. 382. *Bradley* v. *Peixoto*, 3 Ves. 324. *Horne* v. *Lyeth*, 4 Har. & Johns. 431. *Billing* v. *Billing*, 5 Sim. 232. *Ross* v. *Ross*, 1 Jac. & Walk. 154. *Adamson* v. *Armitage*, 19 Ves. 416. There are many cases where, under the rule that an unlimited gift of dividends or income confers an absolute estate in personal property, the interposition of trustees as well as of remainders over has been held insufficient to qualify the absolute estates thus constructively given. Why then should the uncertain isolated clause in this will concerning trust and trustee be held to qualify the absolute estate previously given in terms? *Haig* v. *Swiney*, 1 Sim. & Stu. 487. *Tawney* v. *Ward*, 1 Beav. 563. *Elton* v. *Sheppard*, 1 Bro. C. C. 532. *Hawkins* v. *Hawkins*, 7 Sim. 173. At all events, the whole of all the dividends belong to her for life. *Barclay* v *Wainewright*, 14 Ves. 66.

No counsel appeared for the defendant James E. Head.

CHAPMAN, J. According to the fair interpretation of the will of Elizabeth Smith, the legacies of the Water Power and Mill

Dam stock, which are the subject of this suit, are given in trust, the dividends to be paid to the legatees, Elizabeth Smith Head and James E. Head, during their lives; and after they have severally deceased, the stock is devised over. The word " dividends" is used in the legacy to Elizabeth Smith Head, and the word "income" in the legacy to James E. Head; but both obviously mean the same thing. It is settled that such a gift is not a gift of the stock to either of these persons. *Saunderson* v. *Stearns*, 6 Mass. 37. *Barrus* v. *Kirkland*, 8 Gray, 512.

But it is contended that they are not even entitled to the dividends. It appears that these corporations, which were originally formed with a view to make dividends out of the receipts for the use of water power, mills, and tolls from the use of the mill dam as a way, afterwards changed their purpose, and became land companies, and that since this change their dividends are made from the avails of the sales of the property which constitutes their capital stock. They are therefore dividing not merely their earnings, but their principal. Several English authorities are cited, according to which it is said that these legatees for life ought not to receive such dividends, because they are of an extraordinary character; but that, instead of the dividends, they should receive a sum equal to legal interest on the capital stock; that the balance of the dividends should be regarded as accretions to the capital stock; and that the legatees for life should receive the interest which it may earn, and nothing more. The authorities cited are *Brander* v. *Brander*, 4 Ves. 800, and note; *Paris* v. *Paris*, 10 Ves. 185; *Clayton* v. *Gresham*, Ib. 288. The substance of these decisions is, that, as between a legatee for life of bank stock and a remainder-man, any extraordinary dividend of profits made by the bank among the proprietors is regarded as an accretion to the capital, unless clearly made as dividend only, and the legatee for life will take only the interest upon such accretion. The rule would be undoubtedly applied in England to all similar stocks.

But in this case the dividends are clearly made as such, and are not extraordinary. They are the ordinary dividends, and

the principal ones which land companies may be expected to make, and usually comprise a large part of the dividends of water power companies. The testatrix knew this long before her decease, and was in the habit of receiving the dividends. There is therefore no reason to doubt that she understood the meaning of the language used by her. It is true that the whole capital stock may be exhausted by the dividends in the lifetime of the legatees for life; but on the other hand it is quite possible that a large sum will be left in remainder.

There is no policy of our law which should influence us in construing the will otherwise than according to the plain intent of the testatrix. The general policy of our statutes favors the speedy distribution of estates, while the English policy favors their perpetuation ; but so far as their perpetuation is permitted by our statutes or by the principles of our common law, our only policy is to permit grantors and testators to exercise their own judgment, and to endeavor to construe grants and devises fairly.

Decree to be entered in conformity with this interpretation of the will.