Heighe *vs.* Littig, *et al.*

*Order affirmed, and*
*cause remanded.*

(Decided 11th March, 1885.)

SALLY ROSS HEIGHE, and JOHN M. HEIGHE, her husband *vs.* MARY CLARE ROSS LITTIG, and JOHN M. LITTIG, her husband, and others.

*Trust—Estate for Life—Partnership profits—Income—Life-tenant—Corpus of Estate.*

A testator devised the residue of his estate to his wife in trust for herself for life, with remainder over. Just before his death he entered into a co-partnership which was to continue for three years, and even in the event of his death to be carried on until the end of that period. HELD:

That the profits derived from the testator's share in the partnership belonged to the life-tenant as income, and did not constitute a part of the *corpus* of the testator's estate.

APPEAL from the Circuit Court for Baltimore County, in Equity.

The bill in this case was filed by Mary Clare Ross Littig and her husband, to obtain an accounting between all the parties, *inter sese*, as to the estate of Charles H. Ross, who died in January, 1861, leaving a widow and six children. Four of them only survive. The case is further stated in the opinion of the Court. The Circuit

Court (Fowler, J.) decreed that the trusts of the will of Charles H. Ross, deceased, should be proceeded with under the jurisdiction and supervision of the Court, and to that end appointed John R. Ross trustee to take charge of the trust estate, and to administer the same under the directions of the Court, and referred the cause to the auditor, that the parties might account with each other of and concerning the matters in the proceedings mentioned. From this decree Mrs. Heighe and her husband appealed.

The cause was argued before ALVEY, C. J., YELLOTT, STONE, MILLER, ROBINSON, IRVING, and BRYAN, J.

*W. C. Schley,* and *Bernard Carter,* for the appellants.

*Nevett Steele,* for the appellee, John R. Ross.

*S. Teackle Wallis,* for the appellees, Littig and wife.

YELLOTT, J., delivered the opinion of the Court.

From the bill of complaint and the proof embodied in the record it appears that Charles H. Ross departed this life on the 20th day of January, 1861. Prior to his decease, and on the 21st day of November, 1860, his last will and testament was executed, to which was subsequently added a codicil on the 29th day of December, in the same year. By the terms of these testamentary dispositions of his property, after making provision for the payment of debts and some small legacies, he gave all the rest and residue of his estate to his wife and her successors, in trust for her sole and separate use and benefit during her natural life, with a proviso that if any one of his sons should attain the age of twenty-one years, during the life of his mother, he should be paid the sum of $5,000 out of the estate; this proviso being applicable to each son who should reach that age while his mother was living. And

an annual payment of three hundred dollars was directed
to be made to each daughter, who should marry during
the life of her mother.

After the death of his wife the testator gave one-sixth
of the trust estate thus created, to each one of his six chil-
dren, the sons each to have $5,000 at the age of twenty-one
years, and the remainder of the sixth at the age of thirty
years. It was provided that the daughters should receive
the income from their respective portions of the estate,
thus divided, during their lives, after which the principal
was to go to their children; and in the event of there
being no children, then to their surviving brothers and
sisters. If any of the sons died before receiving the
whole of the share or shares thus assigned the remainder
was to go to the surviving brothers and sisters.

The eldest son of the testator died intestate, unmarried
and without issue, in the year 1880. He had not, at the
time of his death, attained the age of thirty years. The
third son died soon after the testator, being then an infant,
unmarried, without issue and intestate. The four children
of the testator now living are Mrs. Heighe, Mrs. Littig, a
daughter Fannie, at this time an inmate of an insane
asylum, and John R. Ross, a resident of Baltimore
County.

Clara A. Ross, the widow and executrix of said testator,
died in May, 1881. She left a will by which she be-
queathed all she possessed, with the exception of some
small legacies, to her son John and her two married
daughters; and by the terms of said will constituted her
said son John her executor.

The complainants are manifestly entitled to the re-
lief asked for in their bill of complaint. It is necessary
that a trustee should be appointed to take charge of the
estate and to completely execute the trust created by the
will of said Charles R. Ross. They have also a right to
ask that the defendants account with them; that the

inventory be corrected; and that the exact amount of the ·*corpus* of the estate be, as far as possible, ascertained and established.

The only remaining question, to be determined by this Court, is in relation to what should constitute the *corpus* of the estate. This question was ably argued by learned counsel on both sides, but does not seem to present any very great difficulty.

Mr. Ross, the testator, bequeathed his property to be held by his wife in trust for her own use and benefit, during the term of her natural life. She was therefore entitled to the income of the estate; for, if it were otherwise, the bequest would have been nugatory and unproductive of benefits. As she had a life estate, she was entitled to the *whole* income in the absence of any restrictions in the will. She could not, however, appropriate any portion of the capital to her own use. Just before his death, Ross had entered into a co-partnership which was to continue for three years, and even in the event of his death, to be carried on until the end of that period. It is conceded that he had invested about $41,000 in this enterprise. This capital was the only portion of his property which was productive, and very large profits seem to have been derived from the transactions of this partnership. It is contended by the appellees that these profits should be merged in the *corpus* of the estate, while the opposite party hold that they belonged to the life tenant. There would have been but little difficulty in coming to a satisfactory conclusion in relation to the question thus involved in controversy, if Ross, instead of investing his capital of $41,000 in a profitable mercantile enterprise, had purchased a productive farm in the county of his residence, and, by his will, left it to his wife for life, and then in equal parts to his children. In that case, no one would undertake to dispute that the life tenant was entitled to all the income derivable from this

investment. She could not diminish the value of the investment by committing waste, neither could she be required to increase the value by taking a portion of the income and investing it for the benefit of her successors. In determining the respective rights of parties it is difficult to perceive a substantial distinction between this supposed investment in land, and that in a commercial co-partnership. The profits of capital constitute income which inures to the life tenant. Sound reason leads to this conclusion, and in support of so plain a proposition, the citation of numerous adjudicated cases would seem to be unnecessary.

The dividends of the co-partnership were distributed among the members of the firm in conformity with the terms agreed upon at the time of its formation. The larger portion of these dividends inured to the representative of Charles R. Ross. But dividends do not constitute a part of the *corpus* of an estate any more than interest on money constitutes a portion of the principal invested. It has been held that the words dividend and income used in a will bequeathing stock mean the same thing. *Reed vs. Head and others*, 88 *Mass.*, 177.

Where a trust has been thus created for the benefit of some one for life the principle seems to be established beyond controversy that the ordinary profits and natural increase go to the life tenant. *Sutton vs. Crain*, 10 *Gill & J.*, 458; *Harvard College vs. Amory*, 26 *Mass.*, 446; 2 *Perry on Trusts, sections* 544, 545.

The rule, so strenuously contended for on the part of the appellees, is only applicable in case of an extraodinary bonus or addition to the usual income of stock or other property settled in trust for the benefit of one for life. It has no application to the ordinary revenue or income derived from any investment, no matter how large such revenue or income may have become by successful management. *Reed vs. Head and others*, 88 *Mass.*, 176; *Clay-*

*ton vs. Gresham,* 10 *Ves.,* 288; *Paris vs. Paris, Ib.,* 185; *Brander vs. Brander,* 4 *Ves.,* 800.

There is, therefore, apparent error in that portion of the decree of the Court below, which determines that any part of the dividends or income derived from the partnership, or any other investment of capital, should be added to the *corpus* of the estate.

While the widow was entitled to no portion of the capital sum invested, she was entitled to the income as already defined and designated. In all other respects the said decree of the Circuit Court seems to be correct and proper.

It must therefore be affirmed in part and reversed in part, and the cause remanded, so that proceedings may be had in conformity with the principles enunciated in this opinion; the costs to be paid out of the trust fund.

> *Decree affirmed in part, and*
> *reversed in part, and*
> *cause remanded.*

(Decided 11th March, 1885.)