(Hamilton County Court of Common Pleas).

WILLIAM A. PROCTER ET AL., Executors and Trustees under the Will of William Procter, deceased, *v*. WILLIAM A. PROCTER ET AL.

A contract of partnership provided that the net profits realized from the business should be divided equally between the partners; and that each partner may draw $5,000 out of the concern, but no more, during any year until final liquidation; that interest should be allowed and credited to each partner upon all cash he may contribute to the capital, and interest was allowed and credited on the amounts of profits credited to each over the amount drawn out.

*Held :*  That the profits so credited to each, over the amount drawn out, became capital.

(Decided January, 1894.)

---

SAYLER, J.

On July 1, 1879, articles of copartnership were executed by and between William Procter, James Gamble, William A. Procter and Jesse N. Gamble, providing among other things, as follows :

"That said parties have agreed and do hereby agree to associate together for the purpose of continuing and carrying on in Cincinnati, county and state aforesoid, the business of manufacturing soap, candles and oils, refining lard, etc., being the same business heretofore established and for many years carried on by successive firms, but under the same name of Procter & Gamble  *  *  upon the following agreements and conditions, etc.,  *  *  and the co-partnership shall continue for three (3) years from the first day of July, A. D. 1879, to July 1, A. D. 1882. But in case of the death of either of the senior members of said firm, to-wit, William Procter or James Gamble,  *  *  the business of said co-partnership shall be continued without interruption until the expiration of said term and so long thereafter as shall make three (3) years from and after the death of such member.  *  *  The object of this provision being to give survivors ample time to prepare for the withdrawal of the interest or interests of such deceased member or members from the capital and assets of said firm.  *  *  *

"*Third.*—Regular and accurate books shall be kept of all the business of said firm, accessible at all times to any of the members of said firm ; and as often as once in each year an inventory shall be taken of all the stock on hand, accounts, bills receivable and other assets of the firm, and a balance sheet made, showing the true condition of the firm at the date of such inventory.

"*Fourth.*—Each of the members of said co-partnership may draw out of said concern the sum of five thousand dollars ($5,000) per annum, but no more, during any year of the existence of this co-partnership and until final liquidation.

"*Fifth.*—Each of the junior members of said firm, to-wit, William A. Procter and Jesse N. Gamble, shall be allowed and credited six per cent. per annum upon all cash that he may contribute from time to time to the capital stock of said firm. And each of said senior members, William Procter and James Gamble, shall be allowed and credited six per cent. per annum upon all excess of his cash capital at any time over one hundred thousand dollars ($100,000); except that upon the sum of sixty thousand dollars ($60.000), heretofore specially contributed by James Gamble, over and above one hundred thousand dollars, he shall be allowed interest at the rate of seven per cent. per annum.

*Sixth.*—The net profits realized from the business of said co-partnership shall be equally divided between the partners, each receiving twenty-five per cent. thereof. * * *

"*Eighth.*—In case of the death of one of said senior members of said co-partnership within said term of three (3) years, then if all the other members shall be living at the time fixed by article first for a settlement as to the interest of the deceased in said co-partnership, such interest shall be ascertained in the following manner, namely : Three (3) appraisers shall be selected, etc. * * * And the three so selected shall make out, in duplicate, a full inventory and appraisement of the entire assets and liabilities of the co-partnership, etc. * * * And the surviving partners shall take as purchasers all said assets at such appraised value thereof, first deducting therefrom all the debts and liabilities of the firm, which are to be assumed and paid by said survivors. And for the value of such deceased partner's share or interest in such net assets, thus ascertained, the survivors as a firm shall give their five (5) notes," etc.

On January 1, 1880, a supplemental agreement was made, whereby Harley T. Procter was admitted as a member of said firm.

On January 30, 1892, an agreement was entered into, whereby David B Gamble was taken into said firm ; a change was made as to the proportionate apportionment of the net profits, and the original contract as modified extended for three years' time.

William Procter died in April, 1884, and before the expiration of the extended term of three years.

He left a will, which was duly probated, by the provisions of which he devised certain real estate to his wife for life, and bequeathed to her certain furniture and other personal property, and gave all the rest and residue of his estate to three trustees, to be held by them in trust for certain specified purposes, and among others, the following: ."That they pay over to my said wife, Olivia, during her natural life, for her own use and benefit, all the rents, income and profits derived from all said estate, the same to be paid to her quarterly during her life, and upon her decease they divide said estate," together with the said real estate among his children in a manner specified.

In compliance with the terms of the partnership contract the partnership business was continued for the term of three years from the death of said William Procter, during which time the said trustees, under the will,

received from said partnership the sum of $5,000 per annum, being the amount which, under the terms of the contract, each member of safd partnership may draw out of said concern each year; they also received interest upon the cash capital of William Procter in said partnership, as provided for in said contract, all of which has been paid over by them to said Olivia Procter, in accordance with the terms of the will.

In addition to the several amounts so received by said trustees from said firm, certain amounts were credited to the estate of William Procter upon the books of said firm in each of said years, being the share of net profits realized from the business of said co-partnership, over and above the $5,000 paid to the trustees each year, ascertained as provided in said partnership contract and divided among the partners in accordance with the said contract, but no part thereof was paid over to said trustees until final liquidation, when the same was included in the appraised value of the interest of said estate in the assets of said firm, and paid over to them.

The question in issue is, whether such amounts so credited upon the books of the firm to the estate of William Procter under the terms of the partnership contract, and being the share of net profits realized from the business and paid to the trustees on liquidation of the partnership, are to be paid over to Olivia Procter, as rents, income and profits derived from the estate; or are they to be held in trust with the balance of the estate as a part of the capital of said estate?

In McClellen's Rep. 527, the Lord Chief Baron—Sir WILLIAM ALEXANDER—referring to cases, says: "It seems clear from all of them, from the first to the last, that whenever the addition (to the capital of a corporation) was made clearly and distinctly as a dividend only, the tenant for life was to have it; but wherever it was not clearly given as a dividend, it was considered as an accretion capital, divisible amongst the proprietors. I have looked into all the cases with great care, and that seems to be the result of them."

In 3 DeGex, Fischer & Jones, 202, the question was, whether a debt due to a partnership and paid in a given year was capital or income. The court say: "In order to constitute a debt capital, I apprehend you must show that there was an intention on the part of the person interested that it should be dealt with as capital. If it has been reserved and set apart as capital, it would, as I apprehend, of course be capital as between the tenant for life and remainderman; but if it has not been so reserved and set apart, and there be nothing more than that the debt has been got in, it must, as I conceive, be considered as income, and not capital."

In L. R., 5 Eq. 238, the court holds: "That where a company, by a majority of the votes, say that they will not divide money which is profits, but turn it into capital, capital it must be from that time."

In L. R., 6 Ch. App. 503, profits were made for several years, but retained to the credit of profit and loss account; they were afterwards divided, but at the death of the tenant for life a large sum remained to the credit of the profit and loss account. The court held that the case must depend upon the articles of partnership, and say: "There is no question that the money in dispute was profits, but the question is, what is to be done with such profits. * * * It does not follow that because this money was profits, therefore it was to be divided." The court held, that under the articles of partnership division of money which was profits was to be made according to the wish of the partners; that they had retained such portion as capital, and that the executor of the tenant for life was not entitled to it, and say: "Nor is there any hardship in the case, for the widow has had the profits of the investment."

I think the principles laid down in these cases may be applied in determining the case at bar.

It will be noticed that under the articles of copartnership there is no statement as to the specific amount of the capital invested by each partner. The contract recites that the parties associated together for the purpose of continuing and carrying on a business theretofore established and for many years carried on by successive firms; once a year an inventory shall be taken and a balance sheet made showing the condition of the firm; each of the junior members shall be allowed and credited six per centum upon all cash that he may contribute from time to time to the capital stock of said firm; and each of the senior members shall be allowed and credited six per cent. per annum upon all excess of his cash capital at any time over $100,000, except that upon the sum of $60,000 theretofore specially contributed by James Gamble over and above $100,000 he shall be allowed at the rate of seven per cent.

The original contract provides that the net profits realized from the business shall be divided equally between the partners; but it provides that each member may draw $5,000 each year out of the concern, but no more during any year until final liquidation.

It seems to me that the excess of net profits of a partner over and above the amount of $5,000 so to be drawn, and which must be credited to him, as it can not be drawn in the absence of other stipulations, becomes cash contributed by a junior member to the capital stock, or a part of the excess of the cash capital of a senior member, and upon which interest is to be allowed.

It seems to me this construction is supported by the provisions of the contract as to the determination of the interest of a senior member who may die within the term of the partnership, viz.: That his interest shall be ascertained by three appraisers, who shall make a full inventory and appraisement of the entire assets and liabilities, and the surviving partners shall take all said assets at such appraised value after deducting all the debts and liabilities of the firm, which are to be assumed and paid by said survivors; and for the value of such deceased partner's share or interest in such net assets thus ascertained the survivors as a firm shall give their note, etc.

The share of interest in such net assets thus ascertained would include, it seems to me, the net profits of the deceased member credited to him as above. It is true that the debts and liabilities of the firm are to be deducted and are to be assumed and paid by the survivors, but I hardly think a reasonable construction of the words "debts and liabilities" would make them include such credit for profits. If I am correct in this, then the interest of the member, as shown by a credit for net profits, must be an interest in the net assets, which, under this contract, would seem to be the capital.

The contract recites that the purpose of extending the time of the contract in the event of the death of a member, is to give ample time for the withdrawal of the interest of such member from the capital and assets of said firm.

There is no provision in the contract providing for the disposition of this excess of profit other than the provisions which would seem to treat it, that is, require it to be handled, and on liquidation disposed of, as a part of the capital.

By the will it is provided that the rents, income and profits derived from the estate shall be paid to the widow quarterly.

Of course, the testator was making a bequest to be applicable to the nature of his estate. He derived currently $5,000 income from the business. The provision for a quarterly payment is applicable to this income. Any excess of net profits for which he received credit would be paid to him or his estate only on liquidation of the firm. This could not be paid over to

the widow quarterly, and I cannot think the testator considered such excess so credited as a part of his income; it was not an income currently derived from his estate.

In *Heighe* v. *Littig et al.*, 63 Md. 301, the testator bequeathed his property to be held by his wife in trust for her own use and benefit during her life. She was therefore entitled to the income of the estate. Just before his death the testator invested $41,000 in a co-partnership to continue for three years, even in the event of his death. The court held that the wife was entitled to the profits arising from the partnership business, and says the proposition is so plain that citation of authorities is unnecessary.

In that case the property became hers by reason of the devise of the property to her for her use for life. By operation of law she became entitled to income and profits. The capital was fixed, and the net excess was profits.

The court say, *Ib.*, p. 304: "As she had a life estate, she was entitled to the whole income in the absence of any restrictions to the will," and there were no restrictions in the will.

In the case at bar the rights of the widow are determined by the terms of the will; the executors were to pay to her quarterly the income derived from the estate. These words would seem to be a restriction on the amounts to be paid.

I am of the opinion that the amounts credited to the account of William Procter, after his death, became a part of his interest in the capital, and are therefore to be distributed by his executors under his will.

*Thompson, Richards & Park*, for executors.

*Harmon, Colston, Goldsmith & Hoadly*, for Edwin R. Procter and others.

*Wm. Worthington*, for estate of Olivia Procter.