Ex Parte JOHN A. HUMBIRD et al.

*Increase in Value of Property Held in Trust for Life Tenant
With Remainder Over—Extra Dividend on Shares of
Stock Owned by Life Tenant Derived from Sale of
Property of Corporation—What is Income as
Between Life Tenant and Remainderman—
Construction of Will Creating Trust
Estate for Life.*

When a trustee is directed to pay the "interest or earnings"
of the estate to a life tenant with remainder over of the
principal, the life tenant is entitled only to the income, and
an enhancement in the value of the estate is not a part of
the interest or earnings.

The direction in a will that a part of the testator's estate,
amounting to a designated sum, shall be set aside and held
in trust for life tenants, does not mean that the life tenants
are entitled to any increase subsequently accruing in the value
of the trust estate over and above the designated amount.

When a life tenant is entitled to the interest and income on
shares of stock in a corporation, and that corporation sells
a part of the property in which its capital is invested and
distributes the proceeds of the sale as a cash dividend, such
dividend is a part of the corpus of the trust estate and is not
income to which the life tenant is entitled.

The exception to this rule is confined to cases in which the
earnings of a corporation involve the conversion of its capi-
tal, as when the chief business of a corporation is to buy
and sell land in which its capital is invested.

A testator directed that $700,000 of his estate should be held
by trustees who should invest and reinvest the same and pay
the interest or earnings thereof to his seven children for
life with remainder to their respective heirs. One part of
the property constituting the trust estate was an undivided
interest in a tract of timber land in British Columbia, which

cost the testator and the trustees about $30,000.   Afterwards this interest in the land was sold for $85,000.   *Held,* that this increase in the value of the trust estate belongs to the principal, and not to the life tenant.

Another investment held by the said trustees was a number of shares of stock in a Canadian Lumber Company, upon which the payments made by the testator and the trustees after his death out of the corpus, amounted to $196,000.   The Lumber Company sold 52,000 acres of its land, which it had acquired as part of a larger tract made as an investment of its capital.   The amount paid as a cash dividend to the trustees arising from this sale was $676,000.   The company had the power under its charter to buy and sell land, but its business had been confined to operating saw mills and the lumber business generally, and it had not engaged in buying and selling land.   After the sale of the 52,000 acres, the Lumber Company retained land amounting in value to five times its capital stock.   *Held,* that this cash dividend so paid to the trustees is not income or earnings of the investment, but belongs to the corpus of the estate as a result of an increase in its value.

*Decided January 11th, 1911.*

Appeal from the Circuit Court for Allegany County (BOYD, C. J.).

The cause was argued before BRISCOE, PEARCE, SCHMUCKER, BURKE, PATTISON and URNER, JJ.

*Ferdinand Williams* and *George Weems Williams,* for the appellants.

*David A. Reed, Albert A. Doub* and *D. Lindley Sloan* (with whom was *Ralph Longenecker* on the brief), for the appellees.

*Benjamin A. Richmond,* for the trustees.

URNER, J., delivered the opinion of the Court.

The questions presented on this appeal arise from conflicting, though amicable contentions, between life beneficiaries and remaindermen under a testamentary trust, as to the disposition of funds which the former assert to be income, and the latter claim to be corpus of the estate.

The facts upon which these questions are to be determined appear in an agreed statement contained in the record, and are in part as follows:

Jacob Humbird, of Allegany County, died on March 26th. 1894, seized and possessed of a large real and personal estate, and leaving a will by which, after certain dispositions in favor of his widow, he gave all the residue of his estate to his seven children equally, to be held, however, by his sons, John A. and David Humbird, and his son-in-law J. B. G. Roberts, in trust for the use and benefit of all the children. The trustees were directed to "manage, control, invest and reinvest said property or estate in their trust in a careful and prudent manner, and pay or distribute annually to each of said children the interest or earnings of the estate so devised." It was provided that the trust should, "last during the lifetime of each of said children, and after their respective deaths said bequests to go to their heirs." By a codicil to the will the testator, after directing that there be invested in "good and safe security" seven hundred thousand dollars, authorized the reduction of the trust estate to that amount by permitting the trustees to divide the balance of the estate, "equally with the seven heirs."

The executors of the will, who were the same persons named as the trustees, with the consent of all the children of the testator, transferred to the trustees certain real and personal estate amounting to slightly more than $700,000, as constituting the corpus of the trust.

Among the original assets of the trust estate was an undivided one-sixth equitable interest in a tract of 20,000 acres of timber land in British Columbia, known as the Kowitchen

and Kokosala lands upon the purchase of which the testator had paid $11,884.58. The trustees made further payments out of the corpus, upon the investment, increasing its total to $29,039.35. No income was derived from this property. The undivided interest held by the trustees was sold in July, 1910, for $85,549.69. One of the questions we are to consider is whether the whole of the proceeds belongs to the corpus of the trust, or whether the difference between the purchase and selling prices of the land should be applied as income.

Another of the investments which came into the hands of the trustees consisted of 2450 shares of the capital stock of the Victoria Lumber and Manufacturing Company, a Canadian corporation, upon which the testator had paid $111,-149.91, the par value being $245,000. The trustees have continued to hold this stock, and have made further payments upon it, amounting, with those made by the testator, to·a total of $195,999.91. All of the payments by the trustees were from funds belonging to the corpus of the trust estate. Prior to 1910 the company paid only three dividends of three per cent. each on its capital stock. In February, 1910, a dividend of $15.00 per share was declared, and this was followed in July by a further dividend of $276.00 per share. These dividends were paid out of funds realized from the sale of 52,000 acres of the companys' timber lands. The total price was $3,500,000 of which $250,000 was paid in February and the remainder in July, 1910. A portion of the first payment was appropriated to the $15.00 dividend, while the later and larger one was declared out of the balance of the purchase money.

The smaller dividend, amounting to $36,750.00 on the stock of the trust, was distributed by the trustees to the life beneficiaries, and this disposition of the fund it is agreed by all the parties shall be treated as final, and shall not affect the question now presented as to the subsequent dividend of $276.00 per share. The amount of that dividend on the

shares of the trust is $676,000, and is now in the hands of the trustees. It is claimed by the life tenants as income of the trust estate, while the remaindermen assert that it should be held and invested as corpus.

In order that the questions we have indicated might be judicially determined, the trustees filed a petition for that purpose in the equity proceeding in which the jurisdiction of the Court below had been invoked and assumed at the inception of the trust. Answers were filed by all the parties interested setting forth their respective theories, and an agreement was filed stating the facts we have mentioned, together with others to which we will presently allude. The question being thus presented, the learned judge who heard the case below decided that both the funds in controversy are properly to be regarded as corpus, and from his decree, giving effect to that conclusion, the tenants for life have appealed.

The questions to be determined, therefore, involve the application, as between the corpus and income of the trust, of: first, the increase in value realized by the sale of the land held directly by the trustees, and, secondly, the dividend declared out of the proceeds of corporate real estate in which the trustees were interested as stockholders.

Before proceeding to the discussion of these questions, we will recur to the will by which the trust was created to ascertain how far it affects their determination.

As already quoted, the provision relating to the life tenancy of the testator's children in the trust estate directs the trustees to "pay or distribute annually to each of said children the *interest or earnings* of the estate." In the codicil it is provided that, "In case of the death of son or daughter leaving no legal living heirs, the wife of the son and the husband of the daughter may, if living, receive annually one thousand dollars of the *interest* money due the son or daughter;" and, "In case of the death of son or

·daughter leaving no living heirs, their estate, principal and *interest,* shall be divided equally with the grandchildren."

We have italicized the words used by the testator in describing the funds to be paid to the life tenants, because it has been argued that the terms "interest or earnings," mean more than income, and are broad enough to embrace any increase realized on the estate. If this construction could be accepted, it would readily dispose of both the points at issue in this case, as it is, of course, perfectly well settled, that in all such questions the intention of the testator, as expressed on the subject, must be strictly regarded. It seems clear to us, however, that the language of the will does not admit of the construction suggested. That the testator understood and employed the words "interest" and "earnings" as synonymous with each other, and with "income" in its ordinary sense is conclusively shown by the fact that he provided, upon the death of the children, in certain contingencies, for the further appropriation of their shares of the "interest" from the estate.

. It was also suggested that the provision in the codicil authorizing the limitation of the corpus of the trust at its inception to $700,000, and the division of the "balance of the estate" among the seven children, should be taken as indicating that the testator intended the life beneficiaries to have any increase over the original amount which might subsequently accrue. This theory is not supported by the terms of the codicil, and its application would produce results which it is not reasonable to suppose the testator ever contemplated. It would compel the trustees to convert into money, for distribution to the life tenants, every increase in value of the individual securities of the estate, whenever any enhancement over the primary appraisement became apparent. It would have required the sale of the land and stock in question when their appreciation was first noted and when they were far short of the present values. It would involve

constant change in the investments, and would seriously complicate the administration of the trust.

The testator, after providing for the investment of the estate in "good and safe security" to the amount mentioned, empowers the trustees to divide the remainder among the children. This authority having been exercised, the corpus designated is in the same position with reference to the effect of fluctuations in value as if it had been limited in the first instance to $700,000.00.

There is nothing, therefore, in the will before us to differentiate this case from the ordinary situation existing where the life tenants are entitled simply to the income from the trust.

With this understanding of the testator's intention, we can have no difficulty in deciding the first of the questions we have stated. It has been held by this Court that an increase in a trust estate, resulting from the enhancement in value of an investment of the corpus, cannot be distributed as income. *Smith* v. *Hooper*, 95 Md. 16. In the case just cited, a life tenant was claiming the amount obtained from the sale of stock in excess of the sum originally invested, and it was held that the increase thus produced in the trust fund belonged to the corpus. The same principle applies to an investment in real estate under similar circumstances. The fact that, as here, the property may have been unproductive of income does not affect the ownership of its augmented value. This consideration might influence its purchase or retention as an investment but would not change from corpus to income any part of the fund realized from its sale. In this case it appears that the life tenants expressly consented to the taking over of the timber land as part of the trust estate. If it had depreciated in value, they could not have been required to bear the loss, and there is no sound principle upon which they can be awarded the increase which it has produced in the corpus.

This feature of the case was not especially emphasized by the appellants; but it has been argued with great earnestness and ability on their behalf that they are entitled as.life beneficiaries of the trust to the dividend of $676,000.00 received by the trustees upon the stock held by them in the Victoria Lumber and Manufacturing Company.

In considering this question, we are not be governed by the mere form in which the dividend has been declared. The origin and character of the fund out of which the dividend is paid is the controlling subject of inquiry. If it is found to represent earnings, it will be held to be income; but if it is an appropriation of capital, it belongs to the corpus. This has been distinctly settled, so far as this State is concerned, by the case of *Thomas* v. *Gregg,* 78 Md. 545, in which the rules recognized in various jurisdictions were discussed, and the policy of our own Court adopted. In that case a dividend of earnings was declared in the form of stock, but it was held to be income regardless of its form, because of the source from which it was actually derived. It was there said to be the duty of the Court in such cases to ascertain whether the distribution was made from earnings or capital. This duty of investigating the origin of the fund was also recognized in *Quinn* v. *Safe Deposit Co.,* 93 Md. 285, where an extra money dividend arising from accumulated earnings was awarded to life tenants; and in *The Atlantic Coast Line Dividend cases,* 102 Md. 73, where stock dividends originating in the same way were held to be income.

In the present case the fund applied to the dividend in question, as shown by the resolution declaring it, was derived from the sale of timber lands. The property sold, comprising 52,000 acres, had been acquired, except as to a very small proportion, at the beginning of the corporate enterprise in 1890. It was included in a purchase of 88,000 acres of timber land, called the Comox lands, as an investment of capital. The charter of the corporation empowered

it to "purchase, mortgage, lease, hold and acquire timber and other lands, and sell, mortgage, lease or otherwise alienate and dispose of the same, erect mills and machinery, manufacture lumber and all articles made of wood, acquire water privileges and rights of way, construct ditches, flumes, roads and tramways, purchase, sell and acquire goods and merchandise of every kind and description and generally do all such things as are conducive or incidental to the attainment of the above objects, or any of them, in the Province of British Columbia. Under this charter power the company engaged in a saw mill and lumbering business, and its operations and acquisitions of property have been confined to those purposes. In 1910 a part of the proceeds of the sale of the 52,000 acre tract was used in the purchase, from the trustees in this case and from others, of the entire title to the 20,000 acre Kowitchen and Kokosala tract, in which the company already held an undivided interest. Its other purchases of land, after the first, amounted to five or six thousand acres, which about equaled the area from which timber was cut by the company in the prosecution of its business from 1890 to 1910.

The whole of the Comox tract of 88,000 acres was bought by the company in 1890 for $555,000. The sale of 52,000 acres of the tract in 1910 for $3,500,000.00 left the company with ample timber land for its immediate purposes and enabled it not only to declare the extraordinary dividends referred to, but also to complete the purchase of the Kowitchen and Kokosala lands at a cost of $456,264.84, to pay all its outstanding indebtedness, to provide for all contemplated expenditures and improvements, and to reserve $150,000 in its treasury as a working cash balance. After the declaration and payment of the dividends the remaining property and assets of the company have a value about five times the amount paid in to the company upon its issued stock. In other words, notwithstanding the sale of nearly half the land which the company has at any time owned, and the appropria-

tion of most of the proceeds to dividends, the stock held by the trustees in this case, representing an investment of $195,-999.91, has an actual present value of approximately a million dollars. This is due almost wholly to the increase in value of the timber lands.

Upon the facts we have thus stated the inquiry we are now to make is whether a profit made by such a company as we have described out of the sale of land purchased for the purposes of the corporate enterprise is to be regarded as earnings or capital. There is no dispute as to the property having been acquired by the expenditure of capital funds, but it is insisted that in view of the nature of the business in which the company was authorized to engage, and of that which it actually conducted, the amount it gained from the sale over that originally invested should be held to be earnings. If this contention could be sustained, the dividend declared from the fund so produced would undoubtedly belong to the life tenants.

While there has been great diveristy in the decisions as to other aspects of the general subject of the application of dividends as between corpus and income, yet upon the precise question we have now reached in our consideration of this case there appears to be a practical unanimity of judicial opinion.

In a note to *Holbrook* v. *Holbrook* (N. H.) and other cases, 12 L. R. A. (N. S.) 769, 803, containing a very able and comprehensive discussion of the whole subject, it is said:

"The Courts are substantially agreed that a dividend, so called, whatever its form, which is not declared from earnings past or current, but which represents a reduction or change of form of capital, or a mere enhancement of the value of assets representing capital from sources other than the accumulation of earnings, belongs to the corpus and not to the income. There appears, however, to be an exception—at least an apparent exception—to this principle in case of

corporations whose business is such that it necessarily involves the consumption or change of form of capital, *e. g.,* a corporation whose business consists of the purchase and resale of real estate. With the exception of cases of that kind (examples of which are subsequently cited), the principle just stated operates as a practical exception to, or a limitation of, all of the rules and principles previously discussed in this note so far as they operate to award dividends to income."

The rule is thus stated in *Taylor on Private Corporations,* 4th ed., section 799: "When after the testator's death the corporation sells a portion of its property or franchises and distributes the proceeds in the shape of a cash dividend, that, too, is a part of the principal and is not income to be paid over to the life tenants."

In 2 *Clark & Marshall on Private Corporations,* 1620, it is said: "As a rule, dividends declared by a corporation out of its capital, or funds representing capital, as where it sells a portion of the property or franchises in which its capital is invested, and distributes the proceeds, are not income or profits, and do not go to the life beneficiary, but are a part of the principal which must be preserved for the remainderman."

To the same effect are 2 *Thompson on Corporations,* sec. 2220; 10 *Cyc.* 560; 16 *Cyc.* 624; 2 *Purdy's Beach on Private Corporations,* 647; *Clark on Corporations,* 2nd ed.. 343; 9 *Am. and Eng. Encyc. Law,* 2nd ed., 719.

In *Heard* v. *Eldridge,* 109 Mass. 258, a dividend declared out of money paid to the corporation for a part of its property taken under the right of eminent domain was held to be corpus, and not income.

It was held in *Kalbach* v. *Clark,* 133 Iowa, 215 (12 L. R. A., N. S.. 801), that a stock dividend representing the enhanced value of the company's property was corpus and belonged to the remainderman.

In *Holbrook* v. *Holbrook, supra,* it was ruled that whether the dividend was in the form of cash or stock, "if it is found, in whole or part, to represent the natural growth and increase in the value of the corporate plant and business, whether that growth and increase took place before or after the trust was created, it is also to that extent capital"; and in *Walker* v. *Walker,* 68 N. H. 407, it was said that money realized from a sale of corporate property, "was not either in form or in substance, a division of earnings, but a division of so much of the capital of the corporation, and as such goes to the remainderman."

Similar conclusions were reached in *Vinton's Appeal,* 99 Pa. St. 434; *Riggs* v. *Cragg,* 26 Hun. 89, and *Hite* v. *Hite,* 93 Ky. 257.

The exceptions to the general rule we have thus stated and illustrated are confined, as indicated in the note in 12 *L. R. A.* (N. S.) 769, from which we have quoted, to cases in which the earnings of the corporation necessarily involve the conversion of its capital. In *Taylor on Private Corporations,* 4th ed., 799, the exception is thus defined: "Moneys arising from the sale of corporate property and distributed as a cash dividend are income if they arise from a sale of property made by the corporation in the ordinary course of its business, when it sells only such property as its regular business is to sell." In 2 *Clark and Marshall on Private Corporations,* 1621, the general rule is said not to apply "where the nature of the corporation is such that its ordinary business is to sell property in which its capital is invested, and distribute the proceeds among its stockholders."

The cases which have been held to come within the exception clearly indicate its limitations.

In *The Matter of James,* 146 N. Y. 96, where dividends declared out of the proceeds of the sale of lands, representing investments of capital were held to be income, it was said: "These corporations were peculiar in that their only business, after the expenditure of their capital in the construction of

railroads, was to sell the lands received in payment and to divide the proceeds as received among their stockholders. In that respect, of course, there was a distinction between them and corporations which are engaged in ordinary business enterprises and receive returns in the way of earnings upon the invested capital. Their dividends were in truth ordinary, and not extraordinary, for the reason that they were the only ones which they could in the nature of things make."

Upon the same principle dividends were held to be paid out of earnings where the fund originated from sales of real estate by an association organized to buy lands in large tracts and make its profits out of the sale of building lots; *Thompson's Estate,* 153 Pa. 332; and where the dividends were derived from profits accruing from sales of mineral lands by a company formed solely for the purpose of dealing in real estate; *Oliver's Estate,* 136 Pa. 43; and where the company was known to earn its profits from the improvement and sale of land; *Reed* v. *Head,* 6 Allen, 174.

These appear to be all the cases in which the exception we are considering has been applied, and it is evident that none of them resemble in their facts the case at bar.

But it is insisted that this case is within the *principle* of the exception. It is argued, first, that while the Victoria Lumber and Manufacturing Company was not engaged solely in the purchase and sale of land, yet, inasmuch as it was authorized by its charter to buy and sell real estate, the transaction in question should be treated as having been effected in the ordinary course of the company's business. The difficulty with this argument is that it requires us to disregard the agreement of the parties as to the actual facts of the case. It is conceded in the agreed statement that the company "was organized to conduct a saw mill and lumbering business, and that its operations have been confined to those purposes;" "that it has acquired only such lands as were deemed essential to its lumbering operations;" "and that it never engaged in buying or selling land or standing timber on spec-

ulation or as a part of its business." In view of this conclusive declaration as to the real corporate purpose and practice we are not in any way aided in our decision of the question before us by a consideration of the right which the company may have possessed, but which it admittedly has never exercised, to buy and sell land and growing timber for profit.

It is further argued, however, that as the company's business involves the consumption of its timber, and as the price at which the Comox lands were sold represented in large measure their timber value, the amount gained by the sale of the lands should be considered earnings to the same extent as if the growing trees had been converted into lumber, and the dividend fund had resulted from their sale in that form. This theory does not take into consideration the broad and vital distinction between the conversion of raw material into manufactured products and the alienation of the source from which the material is supplied. The severance of trees from the lands of the company for its industrial purposes does not exhaust the value of the property or its capacity for the further production of timber. If the theory suggested could be held applicable to the present facts, it would be equally appropriate and effective in the event of the sale of *all* the company's timber lands and the distribution of the proceeds as dividends. The appreciation of the property has not been produced by the activities of the corporation. It has resulted from economic laws operating independently of the corporate agency or existence. An increase thus accruing in the company's landed capital is essentially different from the ordinary products of its industry which constitute its earnings. In our judgment, this case is clearly within the principle of the general and well-established rule we have discussed, which appropriates to the corpus a dividend paid to a trust estate out of a fund derived from the enhancement and sale of property acquired as an investment of corporate capital.

It was suggested that it is within the power of the Court to make an equitable apportionment of the proceeds of the

dividend as between the life tenants and the remaindermen. If there existed any principle which would justify and guide us in pursuing such a course, we should be glad to admit both classes of claimants to participation in the fund. But there is an insurmountable obstacle to such action in the fact that the dividend, as we have found, actually belongs to the corpus, and its partial diversion to the income would work a distinct injustice to the remaindermen. If we were concerned with the application of a dividend arising from corporate earnings, and it appeared that these were accumulated in part before the creation of the trust, an apportionment as between the income and corpus would be proper and necessary. *Thomas* v. *Gregg, supra.* But when, as in this case, the dividend represents *capital* and belongs as a whole to the corpus of the trust, there is no reason or basis for an apportionment. The cases which have been cited in support of this suggestion involved conditions quite different from the present. In *The Matter of Rogers,* 161 N. Y. 108, a fund, distributed by a company in process of liquidation, representing the proceeds of property in which accumulated earnings had been invested, was awarded to the income of a trust, while substituted stock of a new company which had absorbed the old corporation was held to be corpus; and in the case of *Smith* v. *Dana,* 77 Conn. 543, while the dividend appropriated to income resulted from a sale of part of the corporate plant, this was assumed to represent an investment of earnings.

In the argument great emphasis was laid upon certain expressions in the opinion of this Court in *Smith* vs. *Hooper, supra.* We find nothing in the language employed by the learned Chief Judge who wrote that opinion at all inconsistent with the principle which controls the case at bar. In *Smith* v. *Hooper,* as we have already noted, the claim of a life tenant to the increase in a trust estate resulting from the appreciation of stock was denied. A portion of the stock was still held in the trust, and the remainder had been sold by

the trustees. The augmentation of the trust estate was not realized in the form of a dividend, and no such question as is here presented was considered. It was stated, as a reason why the contention of the life tenant could not be sustained that the corporation had not segregated from the shares any of the elements which made up their value. It was expressly said that the causes which produced the enhancement in the value of the stock were unknown, and that the cash received by the trustees for the stock disposed of could not be regarded as having arisen "from a division of earnings." The opinion does not in any way deal with the question as to the disposition of a dividend which is clearly shown to have originated in an appreciation of capital.

We fully concur in the conclusions reached by the learned judge who heard this case below, and we will affirm his decree directing that both the funds in question be held and invested as part of the corpus of the trust.

*Decree affirmed, the costs to be paid out of the funds in controversy.*