**Beginning with the Concluding Cases of the April Term, 1914.**

## THE WASHINGTON COUNTY HOSPITAL ASSOCIA-TION AND THE WASHINGTON COUNTY FREE LIBRARY

*vs.*

## HAGERSTOWN TRUST COMPANY, TRUSTEE UNDER THE LAST WILL AND TESTAMENT OF EDWARD W. MEALEY, DECEASED.

*Income or corpus of estates: life tenant and remaindermen; dividends from sale of property of corporation; when income.*

Monies arising from the sale of corporate property, distributed as a cash dividend, are income, if they arise from the sale of the property made by the corporation in the ordinary course of its business, when it sells only such property as it is its regular business to sell.       p. 10

The capital stock of a corporation was used to pay for timber, for building a railroad, and for a mill for the manufacture of lumber; the company owned only the timber rights, for a large part of the timber; the business of the company was the cutting of the timber from the land, hauling it to the mill, sawing it, and manufacturing it into timber, beams, boards; and selling the lumber, collecting the money and dividing it among the stockholders as it was obtained; *held*, that in such a case

the dividends so derived by the corporation were to be distributed as income to a life tenant to whom the stock had been bequeathed, and were not to be held as a fund to be added to the corpus for the remaindermen.                    p. 10

*Decided June 26th, 1914.*

Appeal from the Circuit Court for Washington County. In Equity. (KEEDY, J.)

The facts are stated in the opinion of the Court.

The cause was argued before BOYD, C. J., BURKE, URNER, STOCKBRIDGE and CONSTABLE, JJ.

*C. A. Little,* for the Washington County Free Library, appellant.

*Frank G. Wagaman,* for the Washington County Hospital Association, appellant.

*Samuel B. Loose* and *Shirley Carter* (with *J. A. Mason* and *Shirley Carter* on the brief), for the appellee.

BURKE, J., delivered the opinion of the Court.

The question presented by this appeal is whether the sum of $22,200.00 paid to the estate of Edward W. Mealey, as dividends on stock held by him in his life time in two West Virginia Lumber Companies is to be treated as *corpus* and paid to the appellants the legatees in remainder under Mr. Mealey's will, or as *income* payable to the appellee, who is the administrator *c. t. a.* of Mrs. Adelaide Savage Mealey, the life tenant under her husband's will.

Mr. Mealey died on the 28th day of April, 1911. The seventh, or residuary clause of his will, which was dated on the twelfth day of May, 1908, and admitted to probate by the Orphans' Court for Washington County on May 12, 1911, is as follows:

"All the rest, residue and remainder of my estate, real, personal and mixed, and wheresoever situate, I give, devise and bequeath to the Hagerstown Trust Company of Hagerstown, Maryland, Trustee, to hold the same and collect the income therefrom, and pay over the net amount thereof, to my wife, Adelaide Savage Mealey, in semi-annual instalments, and upon her death I direct that the whole corpus or principal of the trust estate held under this clause of my will be passed over and delivered by my said Trustee, as follows: Two-thirds thereof to the Washington County Hospital Association, a body corporate, duly incorporated under the laws of the State of Maryland; and the remaining one-third thereof to The Washington County Free Library, a body corporate, duly incorporated under the laws of the State of Maryland."

Mrs. Mealey, the widow of the testator, died on the 28th of March, 1912, and the dividends, over which the controversy in this case arose, were declared and paid over between the date of the death of Mr. Mealey and that of his wife.

The Washington County Hospital and the Washington County Free Library, the two corporations to which the estate was devised and bequeathed in remainder, claim these dividends as a part of the *corpus* of the estate. This claim is resisted by the appellee who insists that, since the dividends were declared in the ordinary course of business of the companies, and distributed in the time intervening between the date of Mr. Mealey's death and that of his wife they are *income* and not *corpus* and belonged to her, and are payable to her estate.

The lower Court sustained the appellee's contention, and further allowed him as interest the sum of $647.50,—that being the amount of interest received by the trustee upon the amount of the dividends. In a carefully prepared opinion JUDGE KEEDY reviewed fully the facts and law applicable to the case, and signed a decree giving effect to the conclusion

that he had reached, and from the decree this appeal was taken.

The facts that need be stated are these:

The two corporations in which Mr. Mealey held stock at the time of his death and which paid the dividends involved in this case were:

*First*—The Taggarts River Lumber Company, incorporated in April, 1902; and

*Secondly*—The Glady Fork Lumber Company, incorporated in February, 1906.

The objects and purposes of the first named company, as stated in its charter were: "To acquire (by purchase or otherwise), hold, transfer, assign, lease, sell and convey lands, timber-rights, timber, lumber, railroads, tramroads, logging-roads and other real and personal property, whether located in Randolph County, or elsewhere in the State of West Virginia; to construct, maintain, operate and remove saw-mills, tramroads, railroads, logging-roads, telephone, telegraph and electric light plants, roads, lines and appliances, camps, dwelling houses, and any other buildings, yards, equipments and appliances which may be necessary or convenient for the purposes of its incorporation; to cut, haul, manufacture, sell, transport and remove all sorts of timber, and to deliver the same to points within or without the State of West Virginia; to cut, peel, haul, load and deliver, to points within or without the State of West Virginia, bark, pulp-wood and any and all other timber by-products, and to sell the same; and generally to exercise such other functions and to enjoy such other privileges as usually appertain and rightfully belong to corporations organized for similar purposes."

The powers and purposes of the second company were:

"To buy and sell timber lands; to manufacture timber into lumber; to buy and sell lumber and lumber products; to manufacture lumber into lumber products of all kinds; to build houses; to purchase, erect and equip saw mill or saw mills,

and to manufacture thereon lumber into lumber products of
all kinds; to build and equip in connection with said saw
mill or saw mills, electric plant or plants to light said mill
or mills; to build tram or logging railroads in connection
with said lumber operation; and to do any and all other
things necessary or convenient to carry on a general lumber
business, and to manufacture the same into lumber products,
and to sell the same at either wholesale or retail, and to carry
on and operate in connection therewith a general store."

The property of the Taggarts River Lumber Company, in
which its capital stock has been invested, consisted, as stated
by Mr. E. M. Allen, "of a saw mill plant and the necessary
equipment, consisting of houses, store buildings and things
of that sort which the company owned in fee and the land
on which they were situated, and my recollection is we owned
about 1,500 acres in fee in mountain land upon which there
was some timber, and probably 15,000 acres upon which we
had timber rights * * * The 1,500 acres tract was bought
for a right of way for the railroad; there was very little
timber on that."

The capital of the company was used to pay for the tim-
ber, for building a railroad, a mill, and was put in by the
company for the manufacture of lumber. The company
owned only the timber rights of the greater part of the tim-
ber. Practically the same situation existed with reference
to the Glady Fork Lumber Company.

The business carried on by both companies was the cutting
of the timber from the lands, hauling it to the mill, sawing
it, or manufacturing the lumber into timber, beams, boards,
and selling the lumber, collecting the money and dividing it
among the stockholders as it was earned. This was the usual
and ordinary course of the business and methods of the com-
panies, and were the objects for which they were organized.

Nineteen thousand dollars in dividends upon the stock
held by Mr. Mealey in the Taggarts River Lumber Company
were paid in the period intervening between his death and

that of his widow. Testifying as to the source from which that money was derived, Mr. J. A. G. Allen said, it was derived from the products of the company, from the manufacture and sale of lumber.

In the same period three thousand two hundred dollars in dividends were paid upon the stock held by the testator in the Glady Fork Lumber Company. These dividends were derived from the manufacture and sale of lumber taken between April 28, 1911 (the date of Mr. Mealey's death), and March 8, 1912 (the date of Mrs. Mealey's death), from tracts in which the company owned the timber rights.

It is clear from the evidence that the money from which the dividends were paid was derived from the conversion of the standing timber, in which the capital of the companies had been invested, into lumber and the sale of the manufactured lumber, and it was, therefore, derived from the prosecution of the very business the companies were organized to carry on. It is obvious that the prosecution of the companies' business necessarily resulted in the cutting, manufacturing, and selling the property in which the capital was invested, and that was the only possible way by which the stockholders could hope to realize on their investment. While it might be that a portion of the lumber from which the dividends on the stock of the Glady Lumber Company were derived was "sawed, cut out," as stated by Mr. J. A. G. Allen, the lumber had not been sold, and the proceeds received by the company at the time of Mr. Mealey's death, and, therefore, it cannot be held that the proceeds of such lumber, if any there was, were earned in the life time of Mr. Mealey.

This Court had before it the residuary clause of Mr. Mealey's will and the question of the proper distribution of these dividends in the case of *The Hagerstown Trust Company, Executor of Mealey,* 119 Md. 224; but in the condition of the record in that case the Court found it impossible to say whether those sums of money constituted a portion of

the *corpus* of the estate or should have been treated as *income.*

JUDGE STOCKBRIDGE, speaking for the Court, said: "The principles for the determination of this question have been frequently laid down by this Court; see the cases of *Thomas v. Gregg,* 78 Md. 556; *Smith* v. *Hooper,* 95 Md. 16; *Robinson* v. *Bonaparte,* 102 Md. 63; *Atlantic Coast Line Case,* 102 Md. 72; *Ex Parte Humbird,* 114 Md. 627.

But there are no facts before this Court by which it can say definitely whether that portion of the order of the Orphans' Court appealed from was correct or incorrect. * * *" "Under the 7th clause of Mr. Mealey's will his widow was to receive in semi-annual instalments the net income from his estate, but as no dates appear in the account to show when this item of income was received, whether before or after her death, it is impossible for this Court to say from the condition of the record, whether the allowance so asked for by the executor was correct or not. Mrs. Mealey was entitled under her husband's will to receive the net income, as in the will provided, and if there was income due her which had not been paid at the time of her death, it was manifestly a part of her estate and would pass to her personal representatives."

The question of the apportionment of dividends between a life tenant and a remainderman was considered in the recent case of *Virginia Lee Foard* v. *The Safe Deposit and Trust Company of Baltimore, Trustee,* 122 Md. 476, in which it was said: "* * * the modern English rule corresponds closely with what is now known as the Massachusetts rule, by which if the dividend be in cash it is allotted to the life tenant, but if in stock it is added to the *corpus.* This is a simple but an arbitrary rule and calculated to work injustice in many cases. As opposed to this is what is generally known as the Pennsylvania rule, or as designated by Mr. Cook in his work on *Stock and Stockholders,* sec. 554, as the American rule. It is also sometimes designated as

the apportionment rule, and is thus stated in *Smith's Estate,* 140 Pa. 344: 'It is well settled in this State that, when the stock of a corporation is by the will of a decedent given in trust, and the income thereof for the use of a beneficiary for life, with remainder over, the surplus dividends, which have accumulated in the life time of the testator but which are not divided until after his death, belong to the *corpus* of his estate, whilst the dividends of earnings made after his death are *income,* and payable to the life tenant no matter whether the dividends be in cash, or script, or stock.'

"This statement of the rule is the substance of the doctrine as laid down in *Earp's Appeal,* 28 Pa. 368, one of the earliest and leading cases upon the subject in this country. It was argued that the doctrine of *Earp's Appeal* had been shaken if not modified by the decision in *Boyer's Appeal,* 224 Pa. 144, but any such idea is effectually dispelled by the very recent case, *In re Stokes' Estate,* 87 Atlantic, 974, in which the rule adopted in *Earp's Appeal* is distinctly reaffirmed. The cases in this State are in full accord with the Pennsylvania rule."

In *Ex Parte Humbird,* 114 Md. 627, it appeared that Jacob Humbird by his will provided that the residue of his estate should be held by trustees who were directed to manage, control, invest and re-invest said property in a careful and prudent manner, and pay over or distribute annually to each of his children "the interest and earnings" of the estate so devised. The will further provided that the trust should "last during the life time of each of said children, and after their respective deaths said bequests should go to their heirs."

The trustees in that case held an undivided one-sixth equitable interest in twenty thousand acres of land in which $29,039.35 of the *corpus* of the estate had been invested. No income had ever been derived from this property. *This undivided interest was sold for* $85,549.69.

Another investment of the *corpus* of the trust which came into the hands of the trustees were certain shares of stock of a lumber and manufacturing company, upon which the testator had paid $111,149.91. The trustees held the stock, and made certain payments on it out of the *corpus* of the trust, amounting, with those made by the testator to $195,-999.91. Prior to 1910 the company had paid only three dividends on its stock. In February, 1910, a dividend of $15.00 per share was declared, and in July following a further dividend of $276 per share. *These dividends were paid out of funds realized from the sale of fifty-two thousand acres of the company's timber land.* The amount of the dividend involved in that case on the shares of the trust was $676,000. This was claimed by the life tenants as *income,* while the remainderman asserted that it should be treated as *corpus.* Upon these facts two questions were presented for decision:

*First*—Did the whole of the proceeds realized from the sale of the undivided one-sixth equitable interest in the twenty thousand acres of land held directly by the trustees belong to the *corpus* of the trust, or should the difference between the purchase and the selling price of the land be treated as income?

*Second*—Was the dividend declared out of the proceeds of the *sale of the corporate real estate corpus or income?*

The lower Court decided that the money received by the trustees from both sources constituted a part of the *corpus* of the trust, and this Court affirmed the decree upon the general principle stated in *Taylor on Private Corporations* (4th Ed.). sec. 799, and other cases cited in the opinion: "When after the testator's death the company sells a portion of its property or franchises and distributes the proceeds in the shape of a cash dividend, that, too, is a part of the principal and is not income to be paid over to the life tenant."

After holding that the facts of that case brought it within the general rule, JUDGE URNER in his opinion proceeds to

state the principle which, in our opinion, should be applied to this case: "The exceptions to the general rule we have thus stated and illustrated are confined, as indicated in the note in *Holbrook* v. *Holbrook,* 12 L. R. A. (N. S.) 769, from which we have quoted, to cases in which the earnings of the company necessarily involve the conversion of its capital." In *Taylor on Private Corporations* (4th Ed.) 899, the exception is thus defined: "Monies arising from the sale of corporate property, and distributed as a cash dividend, are income if they arise from the sale of property made by the corporation in the ordinary course of its business when it sells only such property as its regular business is to sell." In 2 *Clark and Marshall on Private Corporations* 621, the rule is said not to apply: "Where the nature of the corporation is such that its ordinary business is to sell property in which its capital is invested, and distribute the proceeds among its stockholders."

The facts of this case bring it clearly within the exception to the general rule, and requires us to hold that the dividends in controversy are *income* and are payable to the appellee as decided by the lower Court.

We do not agree with the contention made by the appellants that it was the duty of the trustee to have sold the stocks and invested the proceeds in other securities, and that since this was not in fact done, the Court of Equity will now treat them as converted from the date of Mr. Mealey's death. "and will allow the life tenant such a sum as will represent a fair interest upon the value of the securities at the time at which they are to be considered as converted." There is certainly no rule of Maryland law to support this contention. It is not supported by *Evans* v. *Iglehart,* 6 G. & J. 171, and *Wootten* v. *Burch,* 2 Md. Ch. 200, cited to sustain it, and is contrary to the doctrine announced in *Heighe* v. *Littig,* 63 Md. 301.

The decree appealed from will be affirmed.

> *Decree affirmed, the costs to be paid out of the trust estate.*