LULA H. BOWEN, ET AL. *v.* SAFE DEPOSIT &
TRUST CO. OF BALTIMORE

[No. 132, October Term, 1946.]

*Decided May 16, 1947.*

The cause was argued before MARBURY, C. J., DELA-PLAINE, COLLINS, GRASON, HENDERSON, and MARKELL, JJ.

*Ambler H. Moss* and *William A. Fisher, Jr.*, with whom were *Semmes, Bowen & Semmes* on the brief, for the Remaindermen, appellants.

*George M. White*, with whom were *Page & White* on the brief, for the Life Tenants, appellees.

*Hunter H. Moss*, with whom was *J. Crossan Cooper* on the brief, for the Trustee, appellee.

MARBURY, C. J., delivered the opinion of the Court.

Another Special Case stated, No. 132, October Term, 1946, involves the same trust estate (Charles F. Bevan will) as that discussed in No. 131, *Safe Deposit and Trust Company v. Bowen*, 188 Md. 482, 53 A. 2d 413, and the parties are the same, except that here the remaindermen are appellants and the executor of the life tenant and the trustee are appellees.

On April 1, 1930, the substituted trustee purchased for the principal account of the trust estate, $3,000 principal amount of Georgia, Carolina and Northern Railway Company first mortgage bonds, maturing July 1, 1934. The purchase was at par. Interest on these bonds was five per cent. up to the time of their original maturity on July 1, 1929. A five-year extension fixed the rate at six per cent. Interest was paid up to July 1, 1931, but none paid thereafter. By merger and consolidation the Seaboard Air Line Railway Company had become the successor to the Georgia Company, and in 1901 had assumed all obligations with respect to these bonds. On December 23, 1930, receivers were appointed upon creditor's bill for the Seaboard by the United State District Courts in Virginia and in Florida. On December 3, 1931, the trustee deposited the three bonds with the Bondholders Protective Committee of the Seaboard under a deposit agreement, and received a Certificate of Deposit therefor. On March 29, 1946, the trustee sold the Certificate of Deposit. The net proceeds of the sale were $3,531.90. Prior to the sale of the Certificate of Deposit a plan of reorganization had been approved by the Interstate Commerce Commission, and by the receivership courts, and accepted by the bondholders' committee. Under that plan the property of the old Seaboard Companies were acquired by a new company called the Seaboard *Railroad* Company, and new securities and cash were to be issued for and

in cancellation of the old securities, including those of the Georgia Railway. For each $1,000 bond of the Georgia Railway and the unpaid interest thereon accrued to January 1, 1944, new securities were to be issued as follows: First Mortgage bonds, $356.79, income mortgage bonds $441.33, preferred stock $158.09, common stock, no par value at $100 per share, $898.48, or a total of $1,854.69. In addition to these securities it had also been determined prior to the sale of the Certificate of Deposit made by the trustee, that there should be a cash distribution in payment of interest on old securities for the year 1945. The amount to be paid to the holder of each $1,000 bond of the Georgia Railway was $89.83.

Under these circumstances the question before us is whether the $3,531.90 belongs to the corpus of the trust or whether it should be allocated between corpus and income. The Chancellor held that the proceeds should be apportioned between income and principal, first, by treating the $269.49 paid for the 1945 interest as belonging to income, and by allocating the balance between income and principal *pro rata* as of overdue principal and overdue interest. According to his figures as to each bond this gave 951.40/1951.40 of $1,087.47 to the income account and 1000/1951.40 of $1,087.47 to the principal account. From this decree the remaindermen appeal.

The contention made on behalf of the corpus is that as the will provided that only the net income from the trust estate should be paid to the life tenant and as no income was received, no fiction should be entertained that any was received. They claim that the case is like that considered by this Court in *Ex parte Humbird*, 114 Md. 627, 80 A. 209, which had to do with the sale of unproductive property. In that case the corpus was allowed the proceeds of sale which were greatly in excess of the price at which the property had been acquired by the estate many years before. They cite the case of *In re Otis*, 276 N. Y. 101, 11 N. E. 2d 556,

115 A. L. R. 875, in which the New York Court of Appeals said that transfer of a security, other than a mortgage, by a trustee for a consideration paid in cash or in cash and securities is a sale or exchange of a capital asset. The remaindermen also contend that in case the court should not follow this reasoning, and should think that an apportionment is proper, such apportionment should be made under what is known as the commuted value method set out in the comment to Section 241 of the Restatement of Trusts, and not on a *pro rata* method.

The differences between the exchange of securities such as we discussed in No. 131, *Safe Deposit & Trust Co. v. Bowen,* and the reorganization in the case we are now considering are manifest. In *Safe Deposit & Trust Co. v. Bowen* the trustee held preferred stock on which dividends were in arrears but had not been declared. Such dividends were not actually due. The corporation was not insolvent, and the plan of reorganization proposed did not involve the payment of anything specifically allocated to dividends. In the case now before us there was a creditors' receivership, and the securities held were mortgage bonds and overdue and unpaid coupons. The plan of reorganization specifically recognized both the debt of the principal and the debt of the interest, and the allocation of the new securities was made upon the basis of both. The same priority as to such debts over stockholders in reorganizations is required under decisions of the Supreme Court. *Consolidated Rock Products Co. v. DuBois,* 312 U. S. 510, at page 527, 61 S. Ct. 675, 85 L. Ed. 982, at page 994. See also *Ecker v. Western Pac. R. Corp,* 318 U. S. 448, 63 S. Ct. 692, 87 L. Ed. 892; *Group of Institutional Investors v. Chicago, M., St. P. & P. R. Co.,* 318 U. S. 523, 546, 63 S. Ct. 727, 87 L. Ed. 959. It seems clear that this was not an exchange, but was a payment for debts due and owing. It follows that the fund in the hands of the trustee should be allocated

between the two debts of equal rank, arising out of the same instrument.

The commuted value theory contended for by the remaindermen, and set out in the comment to Section 241 of the Restatement of Trusts, is based upon the recognition of the duty of a trustee to sell investments in certain cases and the right of the life tenant to a proper rate of return from the time such duty arises. The avails of the property are, therefore, divided by alloting to corpus that amount which, if invested when the trustee's duty to sell arose, at the proper rate of return for trust investments, would make the total of this amount and the income thereon equal the avails. The income thus arrived at is allotted to the life tenant. There are two difficulties with this rule. One is to determine just when it becomes the trustee's duty to sell, and the other is to fix the current rate of return on trust investments. It imposes a very difficult duty on the trustee, and it is very hard to determine the rate. This would be especially true in Maryland where trust investments are not narrowly restricted as in some states. The Uniform Principal and Income Act fixes the rate at five per cent. When Maryland adopted its Principal and Income Act (Code, Article 75B) the section in the Uniform Act embodying the commuted value theory was omitted. While our Principal and Income Act does not apply to this case because the trust was created prior to 1939, nevertheless the omission of the commuted value section is an indication that the legislature intended the law, as to apportionment, to remain as it had already been decided by this Court. That decision was made in the case of *Washington County Hospital v. Hagerstown Trust Company*, 124 Md. 1, 91 A. 787, L. R. A. 1915A, 738, where certain dividends on stock in lumber companies had been received by a trustee. It was contended by the remaindermen that these dividends were corpus because they came out of the sale of timber from land which the companies owned, and therefore

it was a disposal of capital assets. The life tenant, on the other hand, claimed that the sales were made in the ordinary course of the business of the companies and, therefore, the dividends represented income. The court held the dividends were income so that the question of the proper method of apportionment was not necessary to the determination of the case. The remaindermen, however, made the point that inasmuch as the investment was not productive for a long period of time, the stock should have been sold and invested in other securities and the court should treat the proceeds as if that had been done and should allow the life tenant only a sum which would represent a fair interest upon the value of the securities at the time at which they should have been converted. The court overruled this contention, stating that it was contrary to the doctrine announced in *Heighe v. Littig*, 63 Md. 301, 52 Am. Rep. 510.

We see no reason to overrule this ruling of the court, and to adopt the commuted value theory. It is difficult to work out in practice, and it leaves a trustee in a position of continuous uncertainty as to what a court may some day hold to be its duty with respect to the securities held by it. We think the *pro rata* theory, based upon the equality in rank of the two claims, is more practical, and more nearly in accord with the facts of the situation. This court has recently recognized this rule with approval, although there was no apportionment directed. That was in the case of *Hubbard v. Hubbard*, 172 Md. 645, 192 A. 592.

The Chancellor directed an apportionment of the $3,531.90 received for the Certificate of Deposit by treating the $269.49 as corresponding to the interest payment allowed by the order of the United States Court, and then allocating the balance of the proceeds of sale between the income and principal, *pro rata,* as to overdue principal and overdue interest. Although the order of the court directing the payment is persuasive in ordinary cases, we are not bound by it. See

*Hubbard v. Hubbard, supra,* where it was not followed, and *Safe Deposit and Trust Company v. Woodbridge,* 184 Md. 560, 42 A. 2d 231, 159 A. L. R. 580, where it was. In this case the order had no reference to apportionment between life tenants and remaindermen, but principally affected disposition of the large 1945 earnings as between creditors of the old corporation and stockholders of the new. In the reorganization securities of the profitable roads received relatively more senior securities and less common stock than securities of the unprofitable roads. Payment of 1945 interest therefore benefited security holders of the profitable roads. We think under the equities of this case the entire sum received by the trustees should be apportioned between overdue principal and overdue interest on the basis of the claim of $1,000 for corpus to $1,041.23 to interest. The 1945 interest paid thus goes to income, but is included in the total apportionment between corpus and income. See *Third National Bank v. Lanahan,* 66 Md. 461, 7 A. 615; *National Union Bank v. National Mechanics Bank,* 80 Md. 371, at page 382, 30 A. 913, 27 L. R. A. 476, 45 Am. St. Rep. 350 (*contra Merrill v. National Bank of Jacksonville,* 173 U. S. 131, 19 S. Ct. 360, 43 L. Ed. 640).

The decree, therefore, will be reversed and the case remanded so that a decree may be passed in conformity with this opinion.

> *Decree reversed and case remanded for further proceedings. Costs to be paid out of the trust estate.*