J. S20023/17

**NON-PRECEDENTIAL DECISION – SEE SUPERIOR COURT I.O.P. 65.37**

| | | |
|---|---|---|
| COMMONWEALTH OF PENNSYLVANIA | : | IN THE SUPERIOR COURT OF |
| | : | PENNSYLVANIA |
| v. | : | |
| | : | |
| MALIK COLLINS, | : | No. 3815 EDA 2015 |
| | : | |
| Appellant | : | |

Appeal from the PCRA Order, December 4, 2015,
in the Court of Common Pleas of Philadelphia County
Criminal Division at No. CP-51-CR-0015549-2010

BEFORE:  BOWES, J., OTT, J., AND FORD ELLIOTT, P.J.E.

MEMORANDUM BY FORD ELLIOTT, P.J.E.:          **FILED JUNE 27, 2017**

Malik Collins appeals ***pro se*** from the December 4, 2015 order dismissing his petition for relief filed pursuant to the Post-Conviction Relief Act ("PCRA"), 42 Pa.C.S.A. §§ 9541-9546.  After careful review, we affirm.[1]

The PCRA court set forth the relevant facts and procedural history of this case as follows:

> On October 10, 2005, at approximately 8:42 p.m., Philadelphia Police Officers Pollack and Hand received a report of a shooting at 20th and Diamond Streets in Philadelphia.  Upon arrival, they found decedent Hassan Bentley lying in front of 2046 N. 20th Street with multiple gunshot wounds to the head and buttocks.  Eyewitnesses Jose Briggs and Clarence Milton testified at trial about their observations of [appellant] and accomplices.

---

[1] The Commonwealth filed a brief indicating that it was relying on the rationale set forth in the PCRA court's June 28, 2016 opinion. (Commonwealth's brief at 2.)

Specifically, Jose Briggs, a resident of 2046 N. 20th Street, testified that he, along with several other people including Clarence Milton, Steve Brown and Mr. Bentley, had been outside on the street engaged in drug activity. Positioned at the entrance to the alleyway which opened up next to 2046 N. 20th Street, Mr. Milton was able to see who entered and exited the block from both directions, as well as anyone present in the driveway. Clarence Martin observed Vincent Segers, also known as "Waters," driving a blue-green Grand Cherokee through the section of 20th Street where everyone was gathered. A man identified as Yaku Walls, also known as "P.L.," was in the front passenger seat and [appellant] was in the backseat of the vehicle as it drove up 20th Street and paused in the middle of the block at 20th and Page before turning the corner.

Mr. Segers had previously spoken to Mr. Milton about resuming drug sales in that area, but was told that he was not welcome on that corner, as Mr. Milton, Mr. Brown and Mr. Bentley were conducting their business there. A few minutes after Mr. Segers drove through the crowded block, Mr. Milton observed [appellant] and Mr. Walls emerge from the driveway wearing baseball caps and dickey suits. Mr. Bentley emerged from the alleyway, walking right behind Mr. Brown, as [appellant] and his accomplice approached and fired a barrage of bullets toward everyone standing outside. Mr. Briggs, standing at the base of the steps in front of his home, observed a man dressed in all black, wearing a black baseball cap with a gold "P" emblazoned on the front and pulled down low on his face, walk from the driveway and open fire before he fled on foot. Everyone in the area ran away when the shots rang out and they later gathered around the home of Mr. Brown. The group quickly realized that Steve Brown suffered a gunshot wound to his arm and that Mr. Bentley was no longer among them. Several people returned to that area to find Mr. Bentley dying and police officers on the scene. Officers arrived on the scene within minutes of the shooting, and noticed shell casings on the ground

from at least two (2) different caliber weapons, a .9 millimeter and a .22 caliber, in the area where Mr. Bentley was slain. It was pouring rain that evening, however officers subsequently recovered fired cartridge casings from a .9 millimeter handgun, but they were unable to find any .22 caliber casings.

On December 16, 2005, Mr. Briggs gave a statement to police, wherein he described the shooter as a black male, about 5'9", who weighed about 140-165 pounds, brown complexion, about 22-years-old, but was unable to identify the perpetrator. Without additional witnesses, this matter became a "cold case" and remained unsolved for many years. Between June and September of 2008, while facing state and federal charges, Clarence Milton came forward with information. Mr. Milton identified [appellant] as the shooter and gave a statement to police outlining the events that led to Mr. Bentley's death. Based on this information, police interviewed Mr. Briggs again, and on October 2, 2008, he was shown a photographic array wherein he identified [appellant] as the shooter. In that interview, Mr. Briggs went on to state that Mr. Brown was the intended target, purportedly in retaliation for a separate shooting allegedly committed by Mr. Brown. Based on the information gathered during the investigation, an arrest warrant for [appellant] was prepared by Detective Kelhower and [appellant] was arrested on January 21, 2010.

PCRA court opinion, 6/28/16 at 3-5, quoting trial court opinion, 5/9/13 at 1-4 (citations to notes of testimony and footnote omitted).

On November 20, 2012, appellant proceeded to a jury trial and was found guilty of first-degree murder, criminal conspiracy, and possessing an instrument of crime.[2] On November 26, 2012, the trial court sentenced

---

[2] 18 Pa.C.S.A. §§ 2502, 903, and 907, respectively.

appellant to life imprisonment without the possibility of parole, followed by a consecutive term of 22½ to 50 years' imprisonment.  On November 7, 2013, a panel of this court affirmed appellant's judgment of sentence, and our supreme court denied his petition for allowance of appeal on May 13, 2014. *See Commonwealth v. Collins*, 91 A.3d 1275 (Pa.Super. 2013), *appeal denied*, 91 A.3d 1238 (Pa. 2014).[3]

On December 2, 2014, appellant filed a *pro se* PCRA petition and Stephen T. O'Hanlon, Esq. ("PCRA counsel") was appointed to represent him. PCRA counsel did not file an amended petition on appellant's behalf.  On August 10, 2015, PCRA counsel filed a "no-merit" letter and a petition to withdraw, in accordance with *Commonwealth v. Turner,* 544 A.2d 927 (Pa. 1988), and *Commonwealth v. Finley*, 550 A.2d 213 (Pa.Super. 1988) (*en banc*).  On October 30, 2015, the PCRA court provided appellant with notice of its intention to dismiss his petition without a hearing, pursuant to Pa.R.Crim.P. 907(1).  Thereafter, on December 4, 2015, the PCRA court granted PCRA counsel's petition to withdraw and dismissed appellant's petition without a hearing.  Appellant filed a *pro se* notice of appeal on December 10, 2015.[4]

---

[3] The record reflects that appellant was represented at trial and on direct appeal by Michael E. Wallace, Esq. (hereinafter, "counsel").

[4] The PCRA court did not order appellant to file a concise statement of errors complained of on appeal, in accordance with Pa.R.A.P. 1925(b). Nonetheless, appellant has attached a Rule 1925(b) statement to his appellate brief, although the docket is unclear as to whether this statement

On appeal, appellant raises the following issues challenging the ineffectiveness of counsel:

1.   Did the PCRA Court error [sic], denying [a]ppellant an evidentiary hearing Ad Subjiciendum---where [counsel] rendered deficient, where counsel failed to [ad]equately [in]vestigate and challenge the Probable cause?

2.   Did the PCRA Court error [sic], denying [a]ppellant a Writ of Habeas Corpus for evidentiary hearing Ad Subjiciendum---where [counsel] rendered ineffective, where counsel failed to object and [pre]serve the Commonwealth's recharging Appellate [sic] without arrest or *Miranda* warnings?

3.   Did the PCRA Court error [sic] where it denied [a]ppellant an evidentiary hearing Ad Subjiciendum---where [counsel] was ineffective; where the trial [c]ourt abused it's [sic] discretion denying [a]ppellant an arrest of judgment pursuant to the conviction of, Murder in the first degree; Possession of Instrument of Crime, and Conspiracy; where the evidence introduced was based on pure speculation and conj[e]cture?

4.   Did the PCRA Court error [sic] in not affording appellant an evidentiary hearing, where [counsel] rendered deficient; where counsel had failed to challenge and [pre]serve the Commonwealth's Prosecutorial Misconduct; where the Prosecuting Attorney failed to (est)ablish the *mens rea* for first degree Murder and related charge(s)?

---

was ever filed. (*See* appellant's brief at Exhibit A.) On June 28, 2016, the PCRA court issued an opinion addressing appellant's claims.

- 5 -

5. Did the PCRA Court error [sic] in not granting [a]ppellant an evidentiary Ad Subjiciendum where, [counsel] rendered ineffective; where he failed to raise and [pre]serve the Prosecution[']s witnesses' testimony's [sic] being inconsistent and of perjury?

6. Did the PCRA Court error [sic]---denying [a]ppellant an evidentiary hearing Ad Subjiciendum where [counsel] was ineffective; where he failed to [ad]equately cross-examine the Prosecution's witnesses' [sic] Clarence Milton, who's [sic] testimony was based on perjury of what he observed to [a]ppellant being the SHOOTER, which if counsel would have thoroughly [in]vestigated the tier [sic] of facts, it would have been seen that Mr. Milton was incarcerated on the [date] in question?

7. Did the PCRA court err in not affording [a]ppellant a Writ of Habeas Corpus Ad Subjiciendum for evidentiary; where [counsel] was ineffective; where he failed to investigate, find and call character witnesses' [sic] of, Willie Bell, whom [sic] was incarcerated in Philadelphia County Prison at [C.F.C.F.] on the [date] that, Clarence Milton testified too that he had observed [a]ppellant SHOOT the victim?

8. Did the PCRA Court error [sic] not granting Appellate [sic] an evidentiary Hearing Ad Subjiciendum---where [counsel] failed to raise and [pre]serve the Prosecutor's witness Jose Briggs, whose testimony was that, [a]ppellant was not at the scene. This was why the case was originally dismissed?

9. Did the PCRA Court error [sic] not affording [a]ppellant a Writ of Habeas Corpus Ad Subjiciendum for evidentiary hearing ---where [counsel] rendered deficient on

> Appellate review in not raising the aforewith [sic] [claims] (1-9)?
>
> 10. Did the PCRA Court error [sic] not affording [a]ppellant an evidentiary hearing Ad Subjiciendum---where [counsel] was ineffective on Appellate review, where counsel deficiently LIED stating; [J]ose Briggs stated, appellant was not present at Murder, when Mr. Briggs testified initially quite oppositely and where charges were initially dismissed?

Appellant's brief at 4-5 (internal quotation marks omitted; citation omitted; capitalization and some bracketed text in original).

Proper appellate review of a PCRA court's dismissal of a PCRA petition is limited to the examination of "whether the PCRA court's determination is supported by the record and free of legal error." ***Commonwealth v. Miller***, 102 A.3d 988, 992 (Pa.Super. 2014) (citation omitted). "The PCRA court's findings will not be disturbed unless there is no support for the findings in the certified record." ***Commonwealth v. Lawson***, 90 A.3d 1, 4 (Pa.Super. 2014) (citations omitted). "This Court grants great deference to the findings of the PCRA court, and we will not disturb those findings merely because the record could support a contrary holding." ***Commonwealth v. Hickman***, 799 A.2d 136, 140 (Pa.Super. 2002) (citation omitted).

Where the PCRA court has dismissed a petitioner's petition without an evidentiary hearing, as was the case here, we review the PCRA court's decision for an abuse of discretion. ***See Commonwealth v. Roney***, 79

A.3d 595, 604 (Pa. 2013), **cert. denied**, 135 S.Ct. 56 (2014) (citation omitted). Moreover,

> the right to an evidentiary hearing on a post-conviction petition is not absolute. It is within the PCRA court's discretion to decline to hold a hearing if the petitioner's claim is patently frivolous and has no support either in the record or other evidence. It is the responsibility of the reviewing court on appeal to examine each issue raised in the PCRA petition in light of the record certified before it in order to determine if the PCRA court erred in its determination that there were no genuine issues of material fact in controversy and in denying relief without conducting an evidentiary hearing.

**Commonwealth v. Wah**, 42 A.3d 335, 338 (Pa.Super. 2012) (internal citations omitted).

Instantly, all ten of appellant's claims challenge the effectiveness of counsel. To prevail on a claim of ineffective assistance of counsel under the PCRA, a petitioner must plead and prove by a preponderance of the evidence that counsel's ineffectiveness "so undermined the truth-determining process that no reliable adjudication of guilt or innocence could have taken place." 42 Pa.C.S.A. § 9543(a)(2)(ii). Specifically, a petitioner must establish that "the underlying claim has arguable merit; second, that counsel had no reasonable basis for his action or inaction; and third, that Appellant was prejudiced." **Commonwealth v. Charleston**, 94 A.3d 1012, 1020 (Pa.Super. 2014), **appeal denied**, 104 A.3d 523 (Pa. 2014) (citation omitted). "[C]ounsel is presumed to be effective and the burden of demonstrating ineffectiveness rests on appellant." **Commonwealth v.**

*Ousley*, 21 A.3d 1238, 1242 (Pa.Super. 2011), *appeal denied*, 30 A.3d 487 (Pa. 2011) (citation omitted). Additionally, we note that "counsel cannot be held ineffective for failing to pursue a meritless claim[.]" *Commonwealth v. Hall*, 867 A.2d 619, 632 (Pa.Super. 2005), *appeal denied*, 895 A.2d 549 (Pa. 2006).

After a thorough review of the record, including the briefs of the parties, the applicable law, and the well-reasoned opinion of the PCRA court, it is our determination that appellant's ineffectiveness claims warrant no relief. The PCRA court comprehensively discussed the ten ineffectiveness claims briefed by appellant and concluded that they were either meritless or not properly developed. (*See* PCRA court opinion, 6/28/16 at 6-15.) We have reviewed the record in its entirety and have considered the merit of appellant's arguments. Following our careful consideration, we find that the PCRA court's conclusions are supported by competent evidence and are clearly free of legal error. Accordingly, we adopt the PCRA court's June 28, 2016 opinion as our own.[5]

---

[5] We recognize that in addressing appellant's claim that his counsel was ineffective for failing to investigate, find, and call character witnesses on his behalf, the PCRA court indicated that appellant failed to attach to his petition an affidavit from each possible witness. (*See* PCRA court opinion, 6/28/16 at 11.) However, in *Commonwealth v. Pander*, 100 A.3d 626, 640-642 (Pa.Super. 2014) (*en banc*), this court held that a request for an evidentiary hearing under the PCRA did not require affidavits from witnesses. Rather, this court held that statements from a *pro se* petitioner or his attorney as to the substance of each witness's testimony would satisfy the PCRA. Notwithstanding the PCRA court's error, we find that the

Based on the foregoing, we affirm the PCRA court's December 4, 2015 order dismissing appellant's petition.

Order affirmed.

Ott, J. joins this Memorandum.

Bowes, J. concurs in the result.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary

Date: 6/27/2017

---

dismissal of appellant's claim was proper given the fact that appellant has provided no statements of any potential witnesses.

## IN THE COURT OF COMMON PLEAS OF PHILADELPHIA COUNTY
### CRIMINAL TRIAL DIVISION

| | | |
|---|---|---|
| COMMONWEALTH OF PENNSYLVANIA | : | CP-51-CR-0015549-2010 |
| | : | |
| v. | CP-51-CR-0015549-2010 Comm. v. Collins, Malik<br>Opinion | SUPERIOR COURT |
| |  | |
| MALIK COLLINS | 7466315421 | 3815  EDA 2015 |

## OPINION

Byrd, J.                                                                                                          June 28, 2016

On November 26, 2012, a jury convicted petitioner Malik Collins of first-degree murder, criminal conspiracy, and possessing instruments of crime (PIC). On that date, petitioner was sentenced to life imprisonment without the possibility of parole, with a consecutive term of imprisonment for twenty-two and one-half (22 ½) to fifty (50) years. On November 28, 2012, petitioner filed a notice of appeal to the Superior Court. On May 9, 2013, this court filed an opinion in accordance with Pennsylvania Rule of Appellate Procedure 1925(a). The Superior Court affirmed petitioner's judgment of sentence on November 7, 2013. On May 13, 2014, his petition for allowance of appeal was denied by the Supreme Court.

On December 2, 2014, petitioner filed a pro se petition seeking relief under the Post Conviction Relief Act ("PCRA"). Shortly thereafter, Stephen T. O'Hanlon, Esquire was appointed as counsel. On August 10, 2015, appointed counsel filed a letter in accordance with *Commonwealth v. Finley*, 550 A.2d 213 (Pa. Super. 1988). After reviewing counsel's *Finley* letter and independently determining that there were no meritorious issues, this court issued a notice of intent to dismiss on October 30, 2015. This court also granted counsel's motion to withdraw. The

**FILED**

JUN 2 8 2016

Criminal Appeals Unit
First Judicial District of PA

*Commw. v. Malik Collins*                          Page 1 of 15

petition was formally dismissed on December 4, 2015. On December 10, 2015, petitioner filed a

pro se notice of appeal. Here, petitioner has raised the following issues:[1]

1. Trial counsel Mr. Michael E. Wallace who subsequentl was petitioner(s) appellate counsel rendered ineffective assistance where counsel "failed" to thoroughly investigate and challenge probable cause.

2. Trial counsel Mr. Wallace was ineffective, where counsel "failed" to object, argue and (raise) the Commonwealth re-charging petitioner without arrest, or Miranda-warning(s).

3. Trial counsel was ineffective, where the Court had manifestly abused it(s) discretion inasmuch as to deny petitioner an arrest of judgment in regard to the conviction for murder in the [first] degree, and possessing an instrument of crime, and criminal conspiracy, where the evidence introduced was based on speculation and pure conjecture.

4. Trial counsel Mr. Wallace rendered ineffective, where counsel, in his deficient performance "failed" to challenge, and preserved the Commonwealth(s), prosecutorial misconduct where the Commonwealth failed to [est]ablish the required and necessary men rea to have [est]ablished that petitioner had committed [first] degree murder and related charge[s].

5. Trial counsel Mr. Wallace was ineffective where counsel had failed to raise and preserve the Commonwealth(s) witnesse(s) testimony being inconsistent and of perjury.

6. Trial counsel Mr. Wallace rendered ineffective where counsel did "not" properly cross-examine the Commonwealth(s) witness Clarence Milton, who(s) testimony was based of perjury of what he had observed in reference to petitioner being the shooter, in which if counsel would have investigated; the true tier of [fact] would have demonstrated that the Commonwealth(s) witness, Clarence Milton was incarcerated on the [date] of the "alleged" crime on; [10/10/2005].

7. Trial counsel Mr. Wallace was ineffective for failing to investigate, find and call character and defense witness, Willie Bell, who was incarcerated in the Philadelphia County prison(s) of CFCF on the [date] Clarence Milton testified too that he had observed the petitioner shoot the victim on the [date] of, [10/10/05].

---

[1] The following is a verbatim recitation of the issues raised in defendant's pro se PCRA petition.

8.   Trial counsel, Mr. Wallace was ineffective at trial where counsel failed to raise and preserve witness Jose Brigg(s), who(s) testimony was; "the petitioner" was not at the scene of the [said] crime. Subsequently, this was the reason the case got dismissed the first time.

9.   Trial counsel Mr. Wallace, who was appellate counsel rendered ineffective representation where on appellate [review], counsel had "not" [raised] the forewith [issie]. Mr. Wallace had [raised] one single [issue].

10.  Trial/appellate counsel Mr. Wallace rendered ineffective at appellate [review] where he had erroneously lied by stating at his [mae] and filed brief stating; Jose Brigg(s) stated petitioner was present at the murder. when the testimony of Mr. Brig[s] was opposite and the charge[s] were initially dismissed.

## STATEMENT OF FACTS

The following facts were summarized in this court's May 9, 2013 1925(a) opinion:

> On October 10, 2005, at approximately 8:42 p.m., Philadelphia Police Officers Pollack and Hand received a report of a shooting at 20th and Diamond Streets in Philadelphia. (N.T., 11/20/12 pp. 51-52). Upon arrival, they found decedent Hassan Bentley lying in front of 2046 N. 20th Street with multiple gunshot wounds to the head and buttocks. (N.T., 11/20/12 p. 52). Eyewitnesses Jose Briggs and Clarence Milton testified at trial about their observations of defendant and accomplices. Specifically, Jose Briggs, a resident of 2046 N. 20th Street, testified that he, along with several other people including Clarence Milton, Steve Brown and Mr. Bentley, had been outside on the street engaged in drug activity. (N.T., 11/20/12 pp. 91-92, 196). Positioned at the entrance to the alleyway which opened up next to 2046 N. 20th Street, Mr. Milton was able to see who entered and exited the block from both directions, as well as anyone present in the driveway. (N.T., 11/20/12 p. 223). Clarence Martin observed Vincent Segers, also known as "Waters," driving a blue-green Grand Cherokee through the section of 20th Street where everyone was gathered. (N.T., 11/20/12 p. 192). A man identified as Yaku Walls, also known as "P.L.," was in the front passenger seat and defendant Malik Collins was in the backseat of the vehicle as it drove up 20th Street and paused in the middle of the block at 20th and Page before turning the corner. (N.T., 11/20/12 p. 198).

Mr. Segers had previously spoken to Mr. Milton about resuming drug sales in that area, but was told that he was not welcome on that corner, as Mr. Milton, Mr. Brown and Mr. Bentley were conducting their business there. (N.T., 11/20/12 pp. 217-19). A few minutes after Mr. Segers drove through the crowded block, Mr. Milton observed defendant and Mr. Walls emerge from the driveway wearing baseball caps and dickey suits. (N.T., 11/20/12 p. 204). Mr. Bentley emerged from the alleyway, walking right behind Mr. Brown, as defendant and his accomplice approached and fired a barrage of bullets toward everyone standing outside. (N.T., 11/20/12 p. 204). Mr. Briggs, standing at the base of the steps in front of his home, observed a man dressed in all black, wearing a black baseball cap with a gold "P" emblazoned on the front and pulled down low on his face, walk from the driveway and open fire before he fled on foot. (N.T., 11/20/12 pp. 94-96). Everyone in the area ran away when the shots rang out and they later gathered around the home of Mr. Brown. (N.T., 11/20/12 p. 98). The group quickly realized that Steve Brown suffered a gunshot wound to his arm and that Mr. Bentley was no longer among them. (N.T., 11/20/12 pp. 99, 204). Several people returned to that area to find Mr. Bentley dying and police officers on the scene. (N.T., 11/20/12 p. 99). Officers arrived on the scene within minutes of the shooting, and noticed shell casings on the ground from at least two (2) different caliber weapons, a .9 millimeter and a .22 caliber, in the area where Mr. Bentley was slain. (N.T., 11/21/22 p. 111). It was pouring rain that evening, however officers subsequently recovered fired cartridge casings from a .9 millimeter handgun, but they were unable to find any .22 caliber casings. (N.T., 11/21/12 p. 113).

On December 16, 2005, Mr. Briggs gave a statement to police, wherein he described the shooter as a black male, about 5'9", who weighed about 140-165 pounds, brown complexion, about 22-years-old, but was unable to identify the perpetrator. (N.T., 11/20/12 p. 104). Without additional witnesses, this matter became a "cold case" and remained unsolved for many years. Between June and September of 2008, while facing state and federal charges, Clarence Milton came forward with information. (N.T., 11/20/12 pp. 185). Mr. Milton identified defendant as the shooter and gave a statement to police outlining the events that led to Mr. Bentley's death. (N.T., 11/20/12 pp. 185-90). Based on this information, police interviewed Mr. Briggs again, and on October 2, 2008, he was shown a photographic array wherein he identified defendant as the shooter. (N.T., 11/21/12 pp. 156, 161).[2] In that interview, Mr.

---

[2] At trial, Mr. Briggs denied that he in fact signed the photo array. (N.T., 11/20/12 p. 126). However, Detective Kelhower, who took Mr. Briggs's statement, testified to his identification. (N.T., 11/21/12 p. 161). The jury was given the opportunity to view the signatures above and below the photographs on the array and determine Mr. Briggs's credibility regarding his denial.

Briggs went on to state that Mr. Brown was the intended target, purportedly in retaliation for a separate shooting allegedly committed by Mr. Brown. (N.T., 11/21/12 p. 157). Based on the information gathered during the investigation, an arrest warrant for defendant was prepared by Detective Kelhower and defendant was arrested on January 21, 2010. (N.T. 11/21/12 p. 183).

## DISCUSSION

The Post Conviction Relief Act ("PCRA") affords collateral relief to those individuals convicted of crimes they did not commit and to those serving illegal sentences. 42 Pa. C.S. § 9542. Claims pursuant to the PCRA are extraordinary assertions that the judicial system failed, however, they are not merely direct appeal claims that are made at a later stage of the judicial proceedings. *Commonwealth v. Rivers*, 567 Pa. 239, 786 A.2d 923 (2001). A petitioner is entitled to file all PCRA petitions, including second and subsequent petitions within one (1) year from the date petitioner's judgment of sentence becomes final. 42 Pa. C.S. § 9545(b)(1); 42 Pa. C.S. § 9545(b)(3). A petitioner is eligible for relief under the PCRA if he proves by a preponderance of the evidence that his conviction or sentence resulted from one or more of the enumerated circumstances found at 42 Pa. C.S. § 9543(a)(2) (setting forth the eligibility requirements of the PCRA). *Commonwealth v. Ligons*, 601 Pa. 103, 971 A.2d 1125 (2009).

A petitioner may be entitled to relief under the PCRA if he is able to plead and prove that a conviction or sentence resulted from ineffective assistance of counsel which, in the circumstances of the particular case, so undermined the truth-determining process that no reliable adjudication of guilt or innocence could have taken place. 42 Pa. C.S. § 9543(a)(2)(ii). It is the ineffectiveness claim, not the underlying error at trial, which is reviewed. *See Commonwealth v. Clayton*, 572 Pa. 395, 816 A.2d 217 (2002). Under the PCRA, an allegation of ineffective assistance of counsel amounts to constitutional malpractice where counsel's incompetence

deprived a defendant of his Sixth Amendment right to counsel. *See Strickland v. Washington*, 466 U.S. 668 (1984); *Commonwealth v. Williams*, 566 Pa. 553, 782 A.2d 517 (2001).

The law requires the presumption that counsel was effective unless the petitioner can fulfill his burden and prove otherwise. *See Commonwealth v. Payne*, 794 A.2d 902 (Pa. Super. 2002). To prevail on an ineffective assistance of counsel claim, petitioner bears the burden of demonstrating: "(1) the underlying claim is of arguable merit; (2) that counsel had no reasonable strategic basis for his or her action or inaction; and (3) but for the errors and omissions of counsel, there is a reasonable probability that the outcome of the proceedings would have been different." *Commonwealth v. Kersteter*, 877 A.2d 466, 468 (Pa. Super 2006). Furthermore, counsel's choices cannot be evaluated in hindsight, but rather should be examined in light of the circumstances at that time. *See Commonwealth v. Hardcastle*, 549 Pa. 450, 701 A.2d 541 (1997). Even if there was no reasonable basis for counsel's course of conduct, a petitioner is not entitled to relief if he fails to demonstrate prejudice. *See Commonwealth v. Douglas*, 537 Pa. 588, 645 A.2d 226 (1994).

In this case, petitioner first claims that trial counsel was ineffective for failing "to thoroughly investigate and challenge probable cause." Petitioner's December 2, 2014 PCRA Petition. However, there was probable cause to arrest Collins based on evidence obtained from eyewitnesses who were present when the shooting occurred. In *Commonwealth v. Rogers*, 615 A.2d 55 (Pa. Super. 1992), the court explained that "[t]he test in this Commonwealth for determining whether probable cause exists for the issuance of an arrest warrant is the 'totality of the circumstances.' " *Id.* at 62 (citing *Illinois v. Gates*, 462 U.S. 213 (1983). The court further noted that "[i]n determining whether probable cause exists, a magistrate is not required to find a showing of criminal activity; mere probability of such criminal activity is sufficient for probable cause." *Id.* (citing *Commonwealth v. Gray*, 469 A.2d 169, 173 (Pa. Super. 1983)). Moreover, "the

information offered to demonstrate probable cause must be viewed in "a common sense, nontechnical, ungrudging and positive manner." *Id.* (citing *Commonwealth v. Jones*, 506 Pa. 262, 484 A.2d 1383 (1984)). Clarence Milton identified Collins as the shooter to police. (N.T., 11/20/2012, at 202-205, 228-229). Jose Briggs identified Collins as the shooter to police. (N.T., 11/20/2012, at 118, 121; 11/21/2012, at 161). Michael Fontaine stated that Collins was riding in a car in the area where the shooting took place. (N.T., 11/21/2012, at 94-95, 175). Further, Selena Mack gave a description of the shooter that matched Collins's physical appearance. *Id.* at 183. *See also Commonwealth v. Irving*, 485 Pa. 596, 601, 403 A.2d 549, 551 (1979) (holding that "[t]here is a substantial basis for crediting the information of an eyewitness" in determining the existence of probable cause). Thus, petitioner's claim lacks arguable merit.

Petitioner's second claim is that trial counsel was ineffective for failing to "object and preserve the Commonwealth's re-charging petitioner without arrest or *Miranda* warnings given." Petitioner's December 2, 2014 PCRA Petition. In relation to *Miranda* warnings:

> To safeguard an uncounseled individual's Fifth Amendment privilege against self-incrimination, suspects subject to custodial interrogation by law enforcement officers must be warned that they have the right to remain silent, that anything they say may be used against them in court, and that they are entitled to the presence of an attorney. Juveniles, as well as adults, are entitled to be apprised of their constitutional rights pursuant to *Miranda*. If a person is not advised of his *Miranda* rights prior to custodial interrogation by law enforcement officers, evidence resulting from such interrogation cannot be used against him. A person is deemed to be in custody for Miranda purposes when [he] is physically denied of his freedom of action in any significant way or is placed in a situation in which he reasonably believes that his freedom of action or movement is restricted by the interrogation.

*In re R.H.*, 568 Pa. 1, 5-6, 791 A.2d 331, 333 (2002) (plurality) (citations and quotation omitted).

In this case, the record does not reflect that any statement was elicited from petitioner. Thus, petitioner was not prejudiced as a result of counsel's alleged inaction because there was no

action that would have achieved a favorable result to petitioner in this context. Accordingly, petitioner's claim is without merit.

Petitioner's third claim is that trial counsel rendered ineffective assistance of counsel "where the Court had manifestly abused its discretion–inasmuch as to deny petitioner an 'arrest of judgment' in regard to the conviction for murder in the first-degree, and possessing an instrument of crime, and criminal conspiracy, where the evidence introduced was based on speculation and conjecture." Petitioner's December 2, 2014 PCRA Petition. In ruling on a motion in arrest of judgment, the court must evaluate the sufficiency of the evidence. *See Commonwealth v. Meadows*, 471 Pa. 201, 369 A.2d 1266 (1977). In evaluating whether the evidence was sufficient to sustain a conviction, the appellate court "must view the evidence in the light most favorable to the Commonwealth as verdict winner, accept as true all the evidence and all reasonable inferences upon which, if believed, the jury could properly have based its verdict, and determine whether such evidence and inferences are sufficient in law to prove guilt beyond a reasonable doubt." *Commonwealth v. Tate*, 485 Pa. 180, 182, 401 A.2d 353, 354 (1979). In applying this test, "the entire record must be evaluated and all evidence actually received must be considered." *Commonwealth v. DiStefano*, 782 A.2d 574, 582 (Pa. Super. 2001) (quoting *Commonwealth v. Hennigan*, 753 A.2d 245, 253 (Pa. Super. 2000)). In *Commonwealth v. Costa-Hernandez*, 802 A.2d 671, 675 (Pa. Super. 2002), the court recognized that the "question of any doubt regarding the facts and circumstances established by the Commonwealth is for the fact-finder to resolve unless the evidence is so weak and inconclusive that, as a matter of law, no probability of fact can be drawn from the combined circumstances." The appellate court may not weigh the evidence and substitute its judgment for the fact-finder. *Commonwealth v. Taylor*, 831 A.2d 661 (Pa. Super. 2003). Further, "it is for the fact finder to make credibility determinations, and the finder of fact

may believe all, part or none of a witness's testimony." *Commonwealth v. Mack*, 850 A.2d 690, 693 (Pa. Super. 2004).

This issue was decided by the Superior Court when it affirmed petitioner's judgment of sentence on November 7, 2013. Indeed, the Superior Court reviewed petitioner's sufficiency claims on appeal and determined that the Commonwealth presented sufficient evidence proving beyond a reasonable doubt Collins was guilty of committing first-degree murder, criminal conspiracy, and possessing an instrument of crime. *See* Superior Court November 7, 2013, Docket No. 3300 EDA 2012. In *Commonwealth v. Howard*, 553 Pa. 226, 280-281, 719 A.2d 233, 240 (1998), the court held that a petitioner "is precluded from raising a claim of post-conviction review that was previously and finally litigated on direct appeal…. Further, an appellant cannot obtain collateral review of previously litigated claims by alleging ineffective assistance of prior counsel and presenting new theories of relief." In light of the Superior Court's affirmance of petitioner's judgment of sentence, there is no basis for the contention that the conviction was based on speculation or conjecture. Therefore, petitioner's claim of ineffectiveness has no merit and must be rejected.

Petitioner's fourth claim is that trial counsel was ineffective for failing "to challenge, and preserve the Commonwealth's 'prosecutorial misconduct,' where the Commonwealth had 'failed' to establish the required and necessary mens rea to have demonstrated that petitioner had committed Murder in the First–Degree and related charges." Petitioner's December 2, 2014 PCRA Petition. "It is well-settled that counsel is presumed to be effective . . . ." *Commonwealth v. Busanet*, 618 Pa. 1, 18, 54 A.3d 35, 45 (2012). In *Commonwealth v. Wharton*, 571 Pa. 85, 86, 811 A.2d 978, 986 (2002), the court noted that "[c]laims of ineffective assistance of counsel are not self-proving; thus, appellant's undeveloped arguments respecting counsel are insufficient to

prove an entitlement to relief." These are arguably three separate claims that petitioner has failed to develop. There is no basis in the record that any prosecutorial misconduct occurred. Therefore, trial counsel was not ineffective for failing to challenge the prosecutor's alleged misconduct. Accordingly, petitioner's claim has no basis in fact.

Petitioner's fifth claim is that trial counsel was ineffective for failure "to raise and preserve the Commonwealth's witnesses' testimonies being inconsistent and of perjury." Petitioner's December 2, 2014 PCRA Petition. There is no support in the record for this claim. Trial counsel thoroughly cross-examined the witnesses. Jose Briggs was cross-examined for over twenty (20) pages as reflected in the notes of testimony. (N.T., 11/20/2012, at 130-147, 157-158). Clarence Milton was also cross-examined extensively as to inconsistency, bias, and motive to lie. (N.T., 11/20/2012, at 215-252, 254-255, 256-257). Indeed, all the Commonwealth witnesses were similarly aggressively cross-examined. As petitioner's claim is factually incorrect, it is without merit.

Petitioner's sixth claim is that trial counsel was ineffective for failing to "properly cross-examine the Commonwealth's witness Clarence Milton, whose testimony was based on perjury of what he observed to petitioner being the shooter, which if counsel would have investigated; the true trier of fact would have demonstrated that the Commonwealth's witness, Mr. Milton was incarcerated on the date of the crime." Petitioner's December 2, 2014 PCRA Petition. Again, this claim is factually incorrect. The record shows that Clarence Milton was extensively cross-examined as to inconsistency, bias, and motive to lie. *Id.* Further, petitioner has failed to develop this claim. *See Wharton.* Therefore, petitioner's sixth claim is without merit.

Petitioner's seventh claim is that trial counsel was ineffective for failing "to investigate, find and call character witnesses, particularly Willie Bell, who was incarcerated in the Philadelphia

County Prisons at, CFCF on the date that Clarence Milton testified too that he had observed the petitioner 'shoot' the victim." Petitioner's December 2, 2014 PCRA Petition. Counsel is obliged to "'conduct a prompt investigation of the circumstances of the case and explore all avenues leading to facts relevant to guilt.'" *Commonwealth v. McCaskill*, 468 A.2d 472, 478 (Pa. Super. 1983) (quoting American Bar Association, Standards for the Defense Function § 4-4.1 (approved 1979)). However, "trial counsel's failure to conduct a more thorough investigation or to interview all potential witnesses does not constitute a per se ineffectiveness." *Commonwealth v. Wallace*, 500 A.2d 816, 818 (Pa. Super. 1985). In *Commonwealth v. Peterkin*, 511 Pa. 299, 319, 513 A.2d 373, 383 (1986), the court explained that the "[t]he reasonableness of counsel's investigative decisions depends critically on the information supplied by the defendant." To prove that counsel was ineffective for failing to call a witness, petitioner must show: "(1) the witness existed; (2) the witness was available to testify for the defense; (3) counsel knew of, or should have known of, the existence of the witness; (4) the witness was willing to testify for the defense; and (5) the absence of the testimony of the witness was so prejudicial as to have denied [appellant] a fair trial." *Commonwealth v. Thomas*, 615 Pa. 477, 496, 44 A.3d 12, 23 (2012) (quoting *Commonwealth v. Johnson*, 600 Pa. 329, 351, 66 A.2d 523, 536 (2009)). Accordingly, petitioner has not properly established this claim. Indeed, petitioner did not attach affidavits from any proffered character witness to his petition. As a result, his claim is a bald assertion of ineffectiveness as he has failed to meet any of the five prongs. *See Commonwealth v. Carter*, 661 A.2d 390, 396 (Pa. Super. 1995) (holding that "[i]neffectiveness for failing to call a witness will not be found where a defendant fails to provide affidavits from the alleged witnesses").

Additionally, trial counsel was not ineffective for failing to call character witnesses because petitioner has a criminal record, does not have "good character," and there is nothing on the record

indicating petitioner wished to call character witnesses at trial. As counsel stated in his *Finley* letter, petitioner had prior criminal convictions, including four murder convictions.[3] Thus, this evidence would have refuted any claim that Collins was a non-violent and law-abiding individual. Petitioner also did not establish any evidence of good character in his petition. Additionally, when defense counsel informed this court of his failed attempt to locate witnesses and that he would rest without calling said witnesses, this court conducted a colloquy of petitioner who participated but did not state he intended to call any character witnesses. Instead, petitioner confirmed that he would rest his case without calling any witnesses. (N.T., 11/26/2012, at 4-12). Accordingly, petitioner has failed to demonstrate that, but for trial counsel's failure to call character witnesses there is a reasonable probability that the outcome of the jury trial would have been different. *See Kersteter*, 877 A.2d at 468. Therefore, trial counsel was not ineffective for failing to call character witnesses.

Petitioner's eighth claim is that trial counsel was ineffective for failing "to raise and preserve the Commonwealth's witness, Jose Briggs, whose testimony was; 'that Malik Collins, Petitioner was not at the scene of the crime.' " Petitioner's December 2, 2014 PCRA Petition. In *Commonwealth v. Reid*, 533 Pa. 508, 626 A.2d 118 (1993), the Supreme Court restated the following:

> In *Commonwealth v. Brady*, 510 Pa. 123, 507 A.2d 66 (1986), we held that otherwise admissible prior inconsistent statements of a declarant who is a witness in a judicial proceeding and is available for cross-examination may be used as substantive evidence to prove the truth of the matters asserted therein. *Id.* at 131, 507 A.2d at 70. We set forth in *Commonwealth v. Lively*, [530] Pa. [464], 610 A.2d 7, also decided today, that otherwise admissible prior inconsistent statements were limited to a statement that had been given under oath at a formal legal proceeding; or a statement that had been reduced to a

---

[3] *See* CP-51-CR-0011195-2007 (convicted of first-degree murder on September 18, 2008); CP-51-CR-0005885-2007 (convicted of first-degree murder on October 23, 2008); CP-51-CR-0004480-2010 (convicted of first-degree murder on August 24, 2011); CP-51-CR-0004481-2010 (convicted of first-degree murder on August 24, 2011).

writing signed and adopted by the witness; or a statement that is a contemporaneous verbatim recording of the witness' statement.

*Id.*, 533 Pa. at 514, 626 A.2d at 121 (quoting *Commonwealth v. Burgos*, 530 Pa. 473, 478, 610 A.2d 11, 14 (1992)).

In this case, Jose Briggs was subjected to direct examination and cross-examination concerning his statement to police and his identification of Collins in a photographic array. In *Commonwealth v. Doa*, 553 A.2d 416, 422 (Pa. Super. 1989), the court held that there was no error in admitting the witnesses' prior identifications of the defendant notwithstanding their failure to identify the defendant at trial. At trial, Jose Briggs denied signing this photographic array and claimed that he did not know the identity of the person who shot decedent. *Id.* As a result of Jose Briggs's recantation, his statement identifying Collins as the shooter from a photographic array was read to the jury. (N.T., 11/20/12, at 106-126). Further, the Commonwealth presented Detective William Kelhower who testified to Jose Briggs's prior identification of the petitioner from the photographic array. (N.T., 11/21/12, at 153-64). *See Commonwealth v. Brady*, 510 Pa. 123, 507 A.2d 66 (1986); *Commonwealth v. Lively*, 530 Pa. 464, 610 A.2d 7 (1992). Therefore, petitioner's claim that trial counsel was ineffective for failing to contest Jose Briggs's recantation of identification has no merit.

Next, petitioner claims that trial counsel was ineffective for failing to raise the above issue on appeal. Here, petitioner claims that trial counsel was ineffective for failing to raise his own ineffectiveness. In general, trial counsel cannot raise his own ineffectiveness. *See, e.g., Commonwealth v. Hughes*, 581 Pa. 274, 865 A.2d 761 (2004). Accordingly, this claim is without merit.

Finally, petitioner claims that trial counsel was ineffective at appellate review "where counsel had lied in Appellate Brief, stating that 'Jose Briggs had saw Mr. Milton at the Murder

when testimony by Mr. Briggs was quite opposite and where the charges were initially dismissed.' " Petitioner's December 2, 2014 PCRA Petition. Petitioner's tenth claim is without merit because it is unintelligible and undeveloped. In his petition, Collins fails to logically establish his claim that trial counsel lied. Therefore, this claim provides no basis for relief under PCRA. *See Commonwealth v. Williams,* 557 Pa. 207, 223, 732 A.2d 1167, 1175 (1999) (acknowledging "unavailability of relief based upon undeveloped claims for which insufficient arguments are presented on appeal").

Furthermore, Collins has failed to establish how a different course of action by counsel would have achieved a different outcome. As the court held in *Commonwealth v. Fisher*, 572 Pa. 105, 116, 813 A.2d 761, 767 (2002), "[s]peculation by hindsight that a different strategy might possibly have been successful is not the test which establishes ineffectiveness of counsel." In *Strickland v. Washington*, 466 U.S. 668, 689 (1984), the United States Supreme Court instructed that "[a] fair assessment of attorney performance requires that every effort be made to eliminate the distorting effects of hindsight, to reconstruct the circumstances of counsel's challenged conduct, and to evaluate the conduct from counsel's perspective at the time." The court has further declared, "A chosen strategy will not be found to have lacked a reasonable basis unless it is proven 'that an alternative not chosen offered a potential for success substantially greater than the course actually pursued.'" *Commonwealth v. Williams*, 587 Pa. 304, 312, 899 A.2d 1060, 1064 (2006) (quoting *Commonwealth v. Howard*, 553 Pa. 266, 274, 719 A.2d 233, 237 (1998)).

Even if petitioner had made an arguably meritorious claim, he is still not entitled to relief because the introduction of any such evidence would not have contributed to a different verdict. *See Commonwealth v. Polk*, 500 A.2d 825, 829 (Pa. Super. 1985) (holding that "[c]ounsel will not be deemed ineffective for failing to assert a defense that would not have been beneficial or for

failing to interview witnesses whose testimony would not have been helpful"). Indeed, the evidence that the Commonwealth adduced at trial proved beyond a reasonable doubt that Collins was guilty of the crimes for which he was convicted. Nothing about prior counsel's representation or trial strategy would have changed this outcome. Thus, petitioner was not prejudiced by counsel's alleged errors. As the court held in *Commonwealth v. Albrecht*, 554 Pa. 31, 46, 720 A.2d 693, 701 (1998), "[i]f it is clear that [petitioner] has not demonstrated that counsel's act or omission adversely affected the outcome of the proceedings, the claim may be dismissed on that basis alone and the court need not first determine whether the first and second prongs have been met." Consequently, Collins is not entitled to PCRA relief under any of the ineffectiveness of counsel claims raised in his petition. Moreover, there is no basis for Collins's claim that this court abused its discretion. This court acted within the bounds of the law and rendered its decisions throughout the course of this case only after careful consideration of counsel's arguments and an independent review of the record, pleadings, and applicable law.

Thus, based on the foregoing, it follows that Collins's ineffectiveness of counsel claims must fail. *See Commonwealth v. Hall*, 582 Pa. 526, 872 A.2d 1177 (2005) (holding that three-prong standard for reviewing ineffectiveness claims applies to the performance of counsel at any level of representation); *Busanet*, 572 Pa. at 545, 817 A.2d at 1066 (ruling that "failure to satisfy any prong of the test for ineffectiveness will require rejection of the claim").

Accordingly, for the foregoing reasons, the dismissal of petitioner's PCRA petition should be AFFIRMED.

BY THE COURT,

Sandy L.V. Byrd, J.